## Opinion to the House of Representatives.

### April 21, 1953.

Advisory Opinion submitted to house of representatives in answer to a question relating to validity of proposed provision in city or town charter or ordinance.

April 21, 1953

To the Honorable, the House of Representatives
of the State of Rhode Island and
Providence Plantations

We have received from the honorable house of representatives a resolution requesting, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon a certain question of law. This question as stated in the resolution reads as follows:

"May a city or town provide by charter or ordinance the following provision:

'The following relatives and their spouses—(a) of any elective official or of his spouse, or (b) of the head of any department or agency of the city or his spouse, are disqualified from holding any appointive city office or any city employment during the term for which said elected official was elected or during the tenure of office of the head of any department or agency respectively: —Child, grandchild, parent, grandparent, brother, sister, half-brother and half-sister. All relationships shall include those arising from adoption. This section shall in no way disqualify such relatives or their spouses who are bona fide appointive officers or employees of the city at the time of the election of said elective official or appointment of said department or agency head respectively.'?"

It is clear from a reading of the question that it is quite general; that it relates to the power of a city or town to provide, either by charter or ordinance, for disqualification of certain individuals from holding any city office or employment but does not disclose whether such charter is an enactment of the general assembly or is a home rule charter, so called, adopted by a city or town under article XXVIII of amendments to the constitution of this state; and that it

does not specify whether the proposed legislation, if an ordinance, is to be passed by a city or town under an enabling act of the general assembly or under powers asserted in such a home rule charter.

From the nature and extent of the subject matter and the above-mentioned indefiniteness of the question, it must be evident that questions of law related thereto would be raised more satisfactorily in a litigated case wherein definite issues would be framed against a background of some particular charter or ordinance in the light of specific pertinent facts. However, we apprehend that the question was prompted by an attempt or proposal to prohibit certain practices, classified generally under nepotism, whereby city appointments might be made and employment might be given upon considerations of relationship apart from the merit and ability of the appointee or employee.

The difficulty in law apparently stems from an uncertainty as to the power to include such provision in a home rule charter adopted by a city or town under article XXVIII of amendments to the constitution of this state or in an ordinance passed thereunder by said city or town. Therefore we shall assume, for the purposes of our present consideration and opinion, that the instant question is intended only to ask whether a municipality acting under said amendment can validly include such a provision in a home rule charter or pass an ordinance thereunder of the nature, extent and form as set forth in the question.

In our opinion the answer to this question is in the negative. At the outset it is worth noting that the provision apparently does not follow the form usually employed in legislation intended to eradicate practices in the nature of nepotism. In other words, it does not provide reasonable restrictions or qualifications on the powers of an office itself or on the person who may be elected or appointed to exercise the powers of such office or to administer a department. On the contrary it expressly places a positive, far-reaching disqualification or bar directly upon a large

specified class of individuals, thus excluding them from eligibility to hold any city office or employment whatever during the term or tenure of office of a person to whom they are related in the prescribed degree.

That disqualification is not related to any charge or conviction for crime, nor even to any supposed lack of loyalty or ordinary merit and ability to perform the particular work. The express disqualification of so many individuals is based solely upon certain described relationships due to the accident of consanguinity or affinity and even of remote relationship by adoption. These restrictions, as stated, are imposed on the individuals of the proscribed class and not at all on the elected city official or the appointed head of a city department or agency. Nor are they placed on the powers of the office to which the last-mentioned persons are respectively elected or appointed.

The provision for such disqualification as expressly intended not only operates differently from, but also goes beyond, the usual form of legislation directed against nepotism, so far as we have discovered. It immediately suggests many illustrations but it will suffice to point out a few examples in order to understand its far-reaching effect. The proposed provision does not confine the disqualification to a person working immediately under the supervision or control of the particular elected city official with whom he may be related by blood, marriage or adoption. Nor is such disqualification limited to a person holding employment in the same department or agency over which such a relative is the appointed head. Under this provision, if a person or his spouse happens to be related, within the degree therein set forth, to an elected official or to the appointed head of a department or agency, or even to the spouse of either of them, then such a person is thereby entirely "disqualified from holding *any appointive city office or any city employment*" during said official's term or tenure of office, although such employment might be far removed from the immediate sphere of the official's activity or control. (italics ours)

Moreover, a person would be disqualified as ineligible to hold a job as street sweeper under the public works department merely because such person, or his wife, is related to the half sister of an elected city official or of the head of another department of the city, such as recorder of deeds. Similarly a person would not be eligible to be employed as a teacher in the public schools if he, or his wife, is related to the adopted child of the wife of the head of any department or agency of such city or town. Furthermore a person who was adopted by the half sister of the wife of a councilman is prohibited from working in any department or in any employment of the city or town, even though the councilman might be a member of the minority in that body, having no exclusive or immediate effective control and supervision over the department and employment in question.

Such examples are not cited for the purpose of minimizing the possible seriousness of the practice apparently sought to be cured. Nor do we intend to indicate any view as to a particular policy with reference to its elimination. These are matters of policy with which we are not here concerned. But the illustrations are mentioned to point out concretely how such an extreme disqualification may subject the provision in its present form to the claim that it is an arbitrary and direct proscription of a class, that it exceeds a reasonable exercise of police powers, and that in effect it is at least in the nature of a bill of attainder.

In the form and to the extent to which this proscription is proposed by the provision in question, we believe it probably would be held by the supreme court of the United States to come within the principles and reasoning of that court in cases dealing with bills of attainder or bills in the nature thereof. See *United States* v. *Lovett,* 328 U. S. 303, *Garner* v. *Board of Public Works of Los Angeles,* 341 U. S. 716, *Hirabayashi* v. *United States,* 320 U. S. 81, and *American Communications Ass'n, C.I.O.* v. *Douds,* 339 U. S. 382. While the facts in those cases may be somewhat different,

the court's discussion of the underlying principle and the reasoning applied therein lead us to believe that a provision of the nature, form and effect as here involved, whether in a charter or ordinance, would be considered in effect to be so much in the nature of a bill of attainder that it would come within the prohibition of article I, section 10, of the United States constitution. In our judgment it probably would be held invalid for that reason alone.

But there is a further reason which in our opinion makes it necessary to answer the question in the negative. It will be noted that the proposed provision is plainly in the category of class legislation. We do not mean that all class legislation is unconstitutional. But such legislation, being an exercise of police powers generally, should be reasonably related to the evil which it is designed to reach and should affect the members of the class equally without unreasonable discrimination. See *Tisdall Co.* v. *Board of Aldermen,* 57 R. I. 96, *Hirabayashi* v. *United States, supra,* and *American Communications Ass'n, C.I.O.* v. *Douds, supra.*

Here the proposed provision expressly effectuates a double discrimination. It first makes an arbitrary distinction between the individuals who may be related in a certain degree to an elected city official or the head of a city department, who are thereby disqualified from holding any city employment, and those persons who are not so related to such official or department head, who are thereby *not* disqualified. Secondly, it goes on to make a further discrimination within the very class which is expressly proscribed.

By virtue of any of the relationships to a city official or head of a department or agency as described in the proposed provision, it expressly and completely disqualifies all the members of that class from holding any employment whatever in the city or town during the term or tenure of office of such official or head. But at the same time, by virtue of an exemption in the last part thereof, it expressly and entirely nullifies such disqualification in the case of

certain other persons of the same class. Thus one person, notwithstanding his relationship within the prescribed degree to an elected official or the head of a department or agency, may be expressly qualified to hold office or employment in the city merely because he may have been so employed at the time of his relative's election or appointment. But by the same token all other persons who are similarly related to such official or head of a department or agency are nevertheless completely disqualified thereby from holding any city office or employment whatever.

In our judgment this double discrimination clearly opens the provision in its present form to the claim that it is class legislation which at least provides for an unreasonable and unnecessary discrimination against persons within the same proscribed class. On that account it appears to us that the provision here, whether in such a charter or ordinance, would be held in principle to exceed a proper exercise of police powers and to violate section 1 of article XIV of amendments to the United States constitution, especially the part which prohibits legislation that would unreasonably abridge the privileges and immunities of citizens and that would deny to any person the equal protection of the law. The principle to be applied in testing the validity of the exercise of police powers has been stated by the United States supreme court as follows: "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws." *Soon Hing* v. *Crowley*, 113 U. S. 703, 709. See also *Tisdall Co.* v. *Board of Aldermen*, 57 R. I. 96, 109, and *State* v. *Conragan*, 58 R. I. 313, 321.

Therefore on the grounds that the proposed provision, whether in such a charter or in an ordinance, seems to be in effect legislation in the nature of a bill of attainder, and

that in its present form and application it provides for an unreasonable and unnecessary discrimination within the proscribed class of citizens, we are of the opinion that the question must be answered in the negative.

Edmund W. Flynn
Antonio A. Capotosto
Hugh B. Baker
Francis B. Condon
Jeremiah E. O'Connell