The Honorable Alicia L. Salisbury State Senator, 20th District State Capitol, Room 120-S Topeka, Kansas 66612-1504
Dear Senator Salisbury:
Your request our opinion regarding whether the Legislative Coordinating Council's policy on nepotism unfairly discriminates against otherwise qualified individuals seeking employment in the legislative branch.
According to the information you have provided, Policy No. 50 of the Legislative Coordinating Council provides:
 "It is LCC policy that members of the immediate family of members of the legislature will not be employed in the house or senate or by any legislative staff agency. A member of the immediate family of an employee of a legislative staff agency will not be employed in any capacity where it is likely that they will be supervised by a relative. The provisions of this policy do not apply to pages in the senate or house of representatives. (Adopted Nov. 4, 1991)."
You do not question the scope of the policy with regard to the degree of relationship involved, or the provision limiting employment of family members of legislative staff in a capacity where they might be supervised by a relative. Your concern is that the first provision prohibits employment of certain relatives of a Legislator regardless whether the position is one that is supervised by that Legislator. With regard to the validity of anti-nepotism provisions in general:
 "The courts have generally recognized or assumed that legislation may be legitimately aimed at discouraging, minimizing, or eliminating the practice of nepotism in the public service, as a proper exercise of the police power. Thus, challenges to the validity of such laws have usually focused on the particular manner in which their objective was sought to be achieved, or on a particular effect. Such challenges have been predicated upon federal and state constitutional guaranties of due process, including contentions that constitutional or statutory provisions are impermissibly vague, and equal protection, as well as upon other grounds, including other state constitutional and statutory provisions, the Ninth Amendment right to privacy, and the privileges and immunities clause of the Federal Constitution.
 "While in most cases, the courts have upheld the validity of laws regulating nepotism in the public service, invalidity has been found where the law had the effect of depriving of employment a person who had been lawfully appointed prior to the occurrence of an alleged nepotism violation, where the law was considered to be a bill of attainder, where it went further than was deemed reasonably necessary to accomplish its purpose, and where it constituted special or class legislation." 63A Am.Jur.2d Public Officers and Employees § 102 (1984) (citations omitted).
The first provision of Policy No. 50 differs from the state's general anti-nepotism law in that it restricts employment of persons related to specific public officials regardless of any action on the part of the public official. See K.S.A. 46-246a and K.A.R. 19-40-4
prohibiting state officers and employees from taking certain actions to advance the employment interests of their family members. However, it is similar to the anti-nepotism statute governing the Kansas Corporation Commission. K.S.A. 74-605.
Courts in other jurisdictions have reviewed nepotism policies prohibiting employment of family members regardless of one's action or ability to take action affecting the other's employment interests, and have upheld such policies under challenges of unlawful discrimination. In Espinoza v. Thoma, 580 F.2d 346 (8th Cir. 1978), the anti-nepotism policy in question prohibited spouses from being employed by a corporation owned by the Transit Authority of the City of Omaha. The Court first established the analysis to be used in determining the policy's constitutionality under the Equal Protection Clause, U.S. Const., Amendment XIV, by quoting from the United States Supreme Court's decision in Reed v. Reed, 404 U.S. 71, 75-76, 30 L.Ed.2d 225,92 S.Ct. 251, 253-254 (1971):
 "In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. V. Virginia, 253 U.S. 412, 415 [, 40 S.Ct. 560, 64 L.Ed. 989] (1920)."
The Court then quoted extensively from the Seventh Circuit Court of Appeals decision in Yuhas v. Libbey-Owens-Ford Co., 562 F.2d 496 (1977) in establishing the basis for the assumption that "it is generally a bad idea to have both partners in a marriage [and other family members] working together." Both the Eighth Circuit in Jones and the Seventh Circuit in Yuhas found the nepotism policies prohibiting employment of spouses by the same employer constitutional under the Equal Protection Clause. The Ninth Circuit Court of Appeals expressed a similar view in Parsons v. County of Del Norte, 728 F.2d 1234 (1984) (rational basis test the correct analysis; "regulation does not become subject to strict scrutiny as involving a suspect class merely because in some way it touches upon the incidents of marriage." 728 F.2d at 1237). But see Opinion to House of Representatives, 96 A.2d 623 (RI 1953).
Policy No. 50 of the Legislative Coordinating Council apparently was adopted pursuant to the LCC's authority granted in K.S.A. 46-1202 "over all legislative services." The minutes of the LCC meetings during which the policy was discussed and then approved do not reflect the purpose for the policy. Minutes, Legislative Coordinating Council, October 7, 1991 and November 4, 1991. However, it is not incumbent on the legislative body to announce its basis for legislation, but rather the burden is on the one challenging legislation to "negate every conceivable basis which might support the classification." Peden v. Kansas Department of Revenue, ___ Kan. ___, Case No. 75,205 (Dec. 20, 1996). We cannot say that the portion of the policy prohibiting employment of family members of Legislators is devoid of any rational basis and therefore we decline to find it facially violative of the Equal Protection Clause of the United States Constitution.
In conclusion, Policy No. 50 of the Legislative Coordinating Council prohibiting the employment of Legislators' immediate family members by either house or any legislative staff agency is not facially violative of the Equal Protection Clause of the United States Constitution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm