## TOWN OF ASCARATE V. JUAN VILLALOBOS

No. A-2210. Decided October 19, 1949.
Rehearing overruled November 16, 1949.
(223 S. W., 2d Series, 945.)

256

*Knollenberg & Long, Fred C. Knollenberg* and *Harold S. Long,* all of El Paso, for petitioner.

The Court of Civil Appeals erred in holding that the ordinance in question resulted in discrimination between the two bus lines as a town may by ordinance make a proper classification of the person or thing sought to be regulated by such ordinance and provide that certain classes will be governed by different rules than other classes. Fletcher v. Bordelon, 56 S. W. (2d) 313; City of San Antonio v. Fetzer, 241 S. W. 1034, writ refused; Houston & T. C. R. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648.

*J. F. Hulse, Schuyler B. Marshall,* and *Burges, Scott, Resberry & Hulse,* all of El Paso, for respondents.

It was not error for the Court of Civil Appeals to hold that as to intercity traffic the ordinance resulted in discrimination between the two bus lines since the burdensome and destructive traffic regulations applied to one inter-city bus line but did not apply to its similarly situated competitor's bus line. City of Ballinger v. Nichols, 297 S. W. 480; Schappi Bus Line v. City of Hammond, 275 U. S. 164, 48 Sup. Ct. 66, 72 L. Ed. 218; Farina Bus Line and Transp. Co. v. Hammond, 275 U. S. 173, 72 L. Ed. 222, 48 Sup. Ct. 70.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case involves the authority of the Town of Ascarate to adopt an ordinance for the purpose of imposing traffic regu-

lations on motor bus traffic through that town, for the protection of the public.

This suit was brought by Juan Villalobos, individually and as administrator of the estate of Alfred Villalobos, deceased, doing business as Lower Valley Bus Line, against the Town of Ascarate, to enjoin enforcement of an ordinance prohibiting any bus from stopping to pick up or unload passengers in the town, except at certain points described in said ordinance, without a franchise from the town. The trial was to the court without a jury, and an order was issued on the basis that the ordinance was void, since it discriminated between the respondent and his competitor, the El Paso-Ysleta Bus Line, Inc., in that the ordinance did not operate upon them equally in the intercity motor bus transportation between El Paso and Ysleta, through Ascarate, Texas. This was affirmed by the Court of Civil Appeals. 220 S. W. (2d) 727.

The Town of Ascarate was incorporated in 1947, and has a population of approximately 6,000. It is completely surrounded by the boundary lines of the City of El Paso, except on its southwesterly side, where it is bounded by the international boundary line which separates the United States from Mexico.

On May 4, 1948, the Town of Ascarate adopted an ordinance regulating the use of the streets of the town by motor busses and motor carriers hauling passengers and freight, defining such motor busses and motor carriers, and containing certain restrictions. The ordinance passed for the purpose of protecting the public from dangerous hazards contains many sections, and the parts of the sections complained of by respondent are copied below.

Section 1 of the ordinance defines the routes to be used by motor busses and motor carriers through the Town of Ascarate.

Subsections (a) and (b) of Section 2 of the ordinance read as follows:

"(a) A Motor Bus for the purpose of this ordinance is defined to include any motor propelled passenger vehicle with a sitting capacity of over eight passengers, not usually operated on or over rails, and used for the purpose of transporting persons for compensation or hire over the public highways and streets, whether operating over fixed routes or fixed schedules or otherwise; provided further that the term 'motor bus' as

used in this ordinance shall not apply to any bus operated by any person, firm or corporation having a franchise to transport passengers for hire within the limits of the Town of Ascarate, nor to busses operated by any school district, either directly or under contract arrangement, or operated by any City, Town or other Sub-Division of the State of Texas, or any department or service of the United States Government.

"(b) 'Motor Carriers' for the purpose of this ordinance is defined to include any motor propelled vehicle used in transporting property for compensation or hire over the public highways and streets which property is not the property of the owner or operator of said motor carrier, providing that nothing in this Ordinance shall be construed as prohibiting any motor carrier so hauling property for compensation or hire from using any of the streets or alleys of the Town for the purpose of receiving from or delivering such property to any person or place within the limits of the Town of Ascarate."

Section 3 reads as follows:

"It shall be unlawful for any motor bus, as herein defined, to stop for the purpose of receiving or discharging passengers, at any points other than the ones hereinafter designated:

(a) At the intersection of Alameda Avenue and Hawkins Way Road; at the intersection of Alameda Avenue and Maryland Drive; at the intersection of Alameda Avenue and Seventh Avenue; at the intersection of Conception St. and Alameda Avenue; on Highway 80 at the eastern town limits.

"(b) In discharging and receiving passengers, all motor busses shall stop off the paved portion of Alameda Avenue just prior to crossing the intersection of the designated streets and shall proceed immediately after having discharged all passengers desiring to be discharged and receiving all passengers waiting at said point to ride said motor bus; however, nothing herein shall be construed to prohibit any motor bus, having stopping points at such intersections or within 200 feet therefrom off said highway on private property from stopping such motor busses at such private depot for any length of time as may be necessary to complete schedule arrangements according to the practices heretofore established."

When it was definitely settled that the Town was an incorporated city, the Town of Ascarate undertook to regulate the motor bus service therein. Complaints had been made regarding such service, and it was decided that better and safer service

could be given the people by a motor bus line operating under a franchise granted by the Town and regulating the operations of the motor bus line. Bids were asked for, and respondent was given the opportunity to bid for the franchise. He stated that he could not obtain the equipment within the time specified by the Town. The franchise was then granted to the El Paso-Ysleta Bus Line, Inc.

In payment for the privileges accorded by the franchise issued to it by the Town, it was provided that the El Paso-Ysleta Bus Line, Inc., would pay monthly to the Town a total aggregate sum of two per cent. of the gross receipts of the Company, its successors, etc., derived from its operation within the Town of Ascarate. It was further provided that such gross receipts would consist of the total amounts received from users of the Company's busses, entering or leaving said busses within the corporate limits of the Town of Ascrate, under the Company's rates or fares in existence at the time of such payments. The payments were to be measured by the amount of fares paid by passengers embarking in Ascarate and disembarking in El Paso, and the amount of fares paid by passengers embarking in El Paso and disbembarking in Ascarate. In the prosecution of its business as intercity carrier, said El Paso-Ysleta Bus Line, Inc. was authorized to take on and discharge passengers within the Town of Ascarate just as it did before the ordinance was passed, and additional busses were put into service to take care of the needs of the public. By the terms of the ordinance of which complaint is made, and which was passed by the Town subsequent to the granting of the franchise to the El Paso-Ysleta Bus Line, Inc., respondent and other motor bus carriers not having a franchise from the Town were restricted in intercity traffic to receiving and discharging passengers in the Town of Ascarate only at the points named in the ordinance. Neither by the terms of the ordinance nor by the terms of the franchise does it appear that an exclusive franchise was granted to the El Paso-Ysleta Bus Line, Inc., although it appears that the El Paso-Ysleta Bus Line, Inc. is the only motor bus line which actually has been granted a franchise by the Town.

The following facts are undisputed:

(a) The route followed by respondent's busses through the Town of Ascarate is 1.9 miles in length, and respondent's busses are permitted to stop at the five points designated in Subsection (a) of Section 3.

(b) The main business district of the Town of Ascarate is

along U. S. Highway 80, and at the present time U. S. Highway 80 is a divided highway, with two lanes for traffic on each side of the dividing line.

(c) That respondent is the owner and holder of Certificate of Convenience and Necessity issued by the Railroad Commission of Texas.

(d) That all State highways entering the Town of Ascarate or running through it can be used by motor busses and motor carriers, as those terms are defined in the ordinance, as the prescribed routes to be used by such motor busses and motor carriers through the Town of Ascarate.

The trial court made the following findings of fact:

That the respondent and the El Paso-Ysleta Bus Line, Inc. are both engaged in the intercity transportation of passengers for hire by motor bus between Ysleta and El Paso, Texas, via Ascarate, along U. S. Highway 80, and that both bus lines operate under Certificates of Convenience and Necessity from the Railroad Commission of Texas, and operate their busses beginning at a point in El Paso over U. S. Highway 80, through Ascarate and on to Ysleta, and return, and that their Railroad Commission schedules are one-half hour apart; that respondent also operates his busses easterly from Ysleta on to Clint, Socorro, San Elizario, Fabens, and return, but that the busses of the El Paso-Ysleta Bus Line, Inc. do not operate farther east than Ysleta; that respondent does not carry on, or intend to carry on, any intracity business in the Town of Ascarate, and carries a large number of passengers from Ascarate to El Paso, and from El Paso to Ascarate, and from El Paso and Ascarate to various points east of Ascarate, including Ysleta, Socorro, San Elizario, Cline, and Fabens, and intervening points, and return.

The trial court further found that the Town of Ascarate, on the 4th day of May, 1948, passed an ordinance prohibiting any bus from stopping to pick up or unload passengers in Ascarate, unless such bus line had a franchise from the Town of Ascarate, at any point other than the five designated points described in Subsection (a) of Section 3. Excepted from these provisions of said ordinance are busses operated by any school district or political subdivision of the State of Texas or of the United States, and busses operated by any person, firm, or corporation having a franchise from the Town of Ascarate.

The trial court also found that the Town of Ascarate granted

a motor bus franchise to the El Paso-Ysleta Bus Line, Inc., and upon receipt of said franchise said bus line added two or three busses to its operations between El Paso and Ascarate only; and that the Town of Ascarate will grant a franchise to but one bus line, and therefore will not now grant a franchise to respondent.

Further, the trial court found that under the franchise granted the El Paso-Ysleta Bus Line, Inc., by the Town of Ascarate, and under the ordinance complained of, that bus line is permitted in its intercity bus business to stop at such points as it wishes along its route, including U. S. Highway 80 within Ascarate, to pick up and discharge passengers; and that respondent in his intercity bus business into and through Ascarate is forbidden by said ordinance to pick up and discharge passengers at any other points except the five designated stops, and that prior to the granting of the franchise to the El Paso-Ysleta Bus Line, Inc., respondent was given every reasonable opportunity to secure the franchise, but due to the fact that respondent was not able to secure equipment as promptly as the El Paso-Ysleta Bus Line, Inc., the franchise was given to the El Paso-Ysleta Bus Line, Inc.

The trial court found that the majority of the busses operated by the El Paso-Ysleta Bus Line, Inc., within the Town of Ascarate operate off U. S. Highway 80, over a route covering outlying districts of the Town of Ascarate; that the busses in stopping to unload and pick up passengers create a menace to the traveling public, both pedestrian and those in automobiles, and that the ordinance, by lessening the stops to five distinct places, has lessened congestion of traffic and has promoted safety to the traveling public, both pedestrian and those in automobiles; and that since the granting of the franchise to the El Paso-Ysleta Bus Line, Inc. more passengers have been taking advantage of the service furnished by that company, and the said increase in service is due to its fifteen minute intervals and to its routes through the Town of Ascarate.

The trial court further found that at any point where the respondent under the ordinance in question would be allowed to discharge his passengers, the traveling public could catch an intracity bus that would carry the passengers over all outlying districts of the Town of Ascarate, and that the State highways located within the Town of Ascarate, or passing through the town, are open to all types of motor bus operations, and there has been no attempt by the Town of Ascarate to deny the use of the said State highways to intercity motor vehicular trans-

portation for hire, nor has the said ordinance had the effect of such a denial.

The court concluded that there is a congestion on U. S. Highway 80 within the Town of Ascarate, sufficient to justify prohibition of stops to load and unload passengers by motor bus transportation, and that the Town of Ascarate may make reasonable traffic regulations within its traffic limits, but is without authority to regulate the intercity motor bus operations of respondent as authorized by the Railroad Commission. The court further concluded that the enforcement of the provisions of Subsection (a) of Section 3 of the ordinance complained of unlawfully discriminates against respondent in his intercity bus business, when considered with Subsection (a) of Section 2 of said ordinance, and that the provisions of the ordinance do not operate equally upon respondent and his competitor in the intercity motor bus transportation business between El Paso and Ysleta, through Ascarate, but grossly discriminates between them, by reason of which discrimination said Subsection (a) of Section 3 of said ordinance is invalid, and entered judgment denying petitioner the right to enforce the ordinance.

The controlling question presented here is whether the trial court and the Court of Civil Appeals were correct in holding that Subsection (a) of Section 3 of the ordinance, requiring a carrier not holding a franchise to stop at the points designated in the ordinance, was invalid because of its being discriminatory or unreasonable.

■ A city has the general power to regulate the use of its streets, and is authorized to enact traffic regulations and to impose reasonable restraints by means of ordinances for the protection of the welfare of the public in the proper use of its streets. Article 1015, Subdivision 36, Vernon's Texas Civil Statutes, 1948; City of Ballinger v. Nichols (Tex. Civ. App.), 297 S. W. 480; Villalobos v. Holguin et al, 146 Texas 474, 208 S .W. (2d) 871; Dallas Railway & Terminal Co. v. Bankston (Comm. of Appls.), 51 S. W. (2d) 304; Waid et al v. City of Ft. Worth (Tex. Civ. Apps.), 258 S. W. 1114, writ refused; 39 Tex. Jur., p. 615, sec. 70; Ex parte Stallcups, 87 Texas Crim. Rep. 203, 220 S. W. 547; 37 Amer. Jur., p. 369, sec. 314; 44 C. J., p. 1029, sec. 3872 (2).

No one has the inherent right to carry on his private business upon the public streets of a town or city. In order to protect the public from dangerous hazards, it is the plain duty of a town or city to make and enforce regulations covering the

use of its streets, as well as for the convenience and protection of the public. West v. City of Waco, 116 Texas 472, 294 S. W. 832; Green v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6, writ refused; City of San Antonio v. Fetzer (Tex. Civ. App.), 241 S. W. 1034, writ refused; Waid v. City of Ft. Worth, supra.

■ The Town of Ascarate granted El Paso-Ysleta Bus Line, Inc. a franchise and enacted the ordinance under consideration for the protection and convenience of the public. The respondent did not hold a franchise from the Town of Ascarate. A city or town may classify persons, organizations, and corporations according to their businesses, and apply different rules to different classes. Fletcher v. Bordelon (Tex. Civ. App.), 56 S. W. (2d) 313, writ refused; Bielecke v. City of Port Arthur (Tex. Civ. App.), 2 S. W. (2d) 1001, reversed on other points (Tex. Com. App.), 12 S.W. (2d) 976; Waid v. City of Ft. Worth, supra; City of Breckenridge v. McMullen (Tex. Civ. App.), 258 S. W. 1099; Bruce v. City of Gainesville (Tex. Civ. App.), 183 S. W. 41; Auto Transit Co. v. City of Ft. Worth (Tex. Civ. App.), 182 S. W. 685, writ refused; Booth v. City of Dallas (Tex. Civ. App.), 179 S. W. 301, writ refused; see 30 Tex. Jur., p. 130, sec. 61.

■ A municipal corporation is considered an arm of the State, and has the police power to protect the safety of the public, and in the exercise of its police power to protect the public from traffic hazards, a city has broad and comprehensive power to enact ordinances for such purposes; and so long as the ordinances do not violate the Constitution or laws of this State, and are not unreasonable and arbitrary, they will be held valid. Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648, 70 L. R. A. 850; Halsell v. Ferguson, 109 Texas 144, 202 S. W. 317, Id. Texas Court Civil App., 203 S. W. 941. This Court, in the case of Halsell v. Ferguson, in passing upon the reasonableness of an ordinance enacted under the police power of a city, quoted with approval the rule stated in Corpus Juris, Vol. 12, p. 931, sec. 442, which is restated in Corpus Juris Secundum, Constitutional Law, b. Limitation on Personal Rights, Vol. 16, p. 581, sec. 199, as follows: "Since the very foundation of the police power is the control of private interests for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person or property are subjected to restraint or that loss will result to individuals from its enforcement." Many decisions of other jurisdictions are cited in the footnotes to sustain the foregoing rule.

■ The validity of an ordinance is a question of law for the

court. Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648; 30 Tex. Jur., p. 127, sec. 60, and cases cited. A city has the power to consider many factors in order to determine the reasonableness and necessity of regulatory restrictions contained in an ordinance adopted under the polic power. City of San Antonio v. Fetzer, supra; City of San Antonio v. Teague (Tex. Civ. App.), 54 S. W. (2d) 566, writ refused; Sitterle v. Victoria Cold Storage Co. (Tex. Civ. App.), 33 S. W. (2d) 546; 30 Tex. Jur., p. 125, sec. 59. The action of the governing body of a city in passing an ordinance is final and conclusive, and cannot be revised by the courts, *unless it is clearly made to appear that their action was arbitrary, unreasonable, and a clear abuse of power.* Halsell v. Ferguson, supra; City of New Braunfels v. Waldschmidt, 109 Texas 302, 207 S. W. 303, reversing 193 S. W. 1077; see 30 Tex. Jur., p. 125, sec. 59.

■ The presumption is in favor of the validity of an ordinance, and the burden of showing its invalidity rests on the party attacking it. But where it clearly appears that an ordinance is unnecessary and unreasonable, the courts have the undoubted right to declare it void. Houston, & T. C. Ry. Co. v. City of Dallas, supra; City of Austin v. Austin City Cemetery Assn., 87 Texas 330, 28 S. W. 528, 47 Am. St. Rep. 114; 30 Tex. Jur., p. 126, sec. 59. An ordinance will not be declared invalid because it places a restraint upon the private rights of some person or company. Halsell v. Ferguson, supra; 30 Tex. Jur., p. 121, sec. 58.

■ One holding a Certificate of Convenience and Necessity from the Railroad Commission to operate a motor bus line over a highway of this State is not thereby conferred with rights paramount or superior to the authority of a city, through which the highway runs, to regulate the traffic on its streets for the protection of the public. City of Wichita Falls v. Bowen, Trustee, 143 Texas 45, 182 S. W. (2d) 695, 154 A. L. R. 1434; Tennessee Coach Co. et al v. Mayor, Etc., of the City of Lenoir, 179 Tenn. 45 3,167 S. W. (2d) 335, 144 A. L. R. 1116, and annotation of cases in other States.

■ . The Town of Ascarate, in the exercise of its discretion and power, granted a franchise to the El Paso-Ysleta Bus Line, Inc. for certain considerations. The ordinance passed by the Town of Ascarate does not prevent respondent and those who do not have a franchise from using the streets of the Town, but to prevent congestion and dangerous hazards to the public certain points are designated therein as the only points where bus lines are allowed to discharge and receive passengers. Under the

ordinance all persons, concerns, and corporations in the class with respondent are to be treated alike, under like conditions, and the ordinance is not subject to the objection that the Town discriminated against respondent and denied him an equal protection of the law. Fletcher v. Bordelon (Tex. Civ. App.), 56 S. W. (2d), writ refused; Waid v. City of Ft. Worth (Tex. Civ. App.), 258 S. W. 1114, writ refused; 30 Tex. Jur., p. 130, sec. 61.

It clearly appears that a great volume of traffic passes over U. S. Highway 80, which traverses the main business section of the Town of Ascarate, and unquestionably dangerous hazards to the safety of the public are created on account of such condition. The ordinance does not prohibit respondent, who did not desire to handle intracity passengers, from using the streets, but for the safety of the public he is limited to certain designated points for discharging and taking on passengers. It was the duty of the city authorities to adopt some method of placing reasonable regulations on the traffic. It is not shown that the city authorities in passing the ordinance under consideration acted in bad faith in endeavoring to protect the safety of the public, or that the ordinance was enacted for the purpose of discriminating in favor of or against anyone. Nor does it appear that the provisions of the ordinance are unreasonable. The ordinance is valid, and the trial court and Court of Civil Appeals erred in holding it invalid.

The judgments of the trial court and the Court of Civil Appeals are reversed, and judgment is rendered in favor of the Town of Ascarate.

Opinion delivered October 19, 1949.

Rehearing overruled November 16, 1949.