The CITY OF DALLAS, TEXAS, the City of Fort Worth, Texas, and the Dallas-Fort Worth Regional Airport Board, Plaintiffs-Appellants,

v.

SOUTHWEST AIRLINES CO.,
Defendant-Appellee,

and

Texas Aeronautic Commission,
Intervenor-Appellee.

No. 73-2478.

United States Court of Appeals,
Fifth Circuit.

May 31, 1974.

Rehearing and Rehearing En Banc Denied June 24, 1974.

---

N. Alex Bickley, City Atty., Dallas, Tex., for City of Dallas.

S. G. Johndroe, Jr., City Atty., Fort Worth, Tex., for City of Fort Worth.

Lee E. Holt, Charles C. Wells, Asst. City Attys., Dallas, Tex., for Dallas-Fort Worth Regional Airport Bd.

John L. Hauer, Michael Caolo, Jr., Robert E. Goodfriend, Dallas, Tex., Herbert D. Kelleher, John T. Behrendt, San Antonio, Tex., for Southwest Airlines Co

John Hill, Atty. Gen., Rex H. White, Jr. Asst. Atty. Gen., Austin, Tex., for Tex. Station Aeronautic.

R. S. Maurer, Robert S. Harkey, Atlanta, Ga., for Delta Air Lines, Inc., amicus curiae.

Richard A. Lempert, New York City, for American Airlines, amicus curiae.

G. Edward Cotter, Los Angeles, Cal., for Continental Air Lines, Inc., amicus curiae.

Sam Coats, Houston, Tex., for Texas International Airlines, Inc., amicus curiae.

Paul Rodgers, Sumner J. Katz, Washington, D. C., for Nat'l Assn. of Regulatory Utility Commissioners.

Before ALDRICH, Senior Circuit Judge,* and BELL and GEE, Circuit Judges.

GEE, Circuit Judge:

This is a suit for declaratory judgment brought by the cities of Dallas and Fort Worth and their joint agent, an airport board created by intercity compact, to determine their right to close Dallas' Love Field to scheduled passenger serv-

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

ice by a state-certificated, intrastate commuter line, Southwest Airlines Co. From a judgment that, so long as Love Field remains open as an airport, appellants may not exclude Southwest from it, plaintiffs appeal. We affirm.

Dallas and Fort Worth, large cities in north-central Texas about thirty miles apart, have been rivals over the years. Perhaps partly as a result of this, each developed its own airport. These lie more or less between the two cities and are themselves only twelve miles apart. In consequence of federal Civil Aeronautics Board hearings commenced in 1962, the cities were given to understand that, if they were unable to agree within a reasonable time on a single port for interstate air service to the Dallas-Fort Worth area, the CAB felt obliged to designate one.

The handwriting being thus upon the wall, the cities found themselves, after all, able to agree. In due course, and with CAB blessing and encouragement, they constructed a new airfield and persuaded all interstate, CAB-certificated carriers then serving the area to agree to move their services there.[1] Southwest, an intrastate commuter line certificated by the Texas Aeronautics Commission to serve Love, did not agree and has refused to move. By various ordinances, the validity and effect of which is our concern here, Dallas has sought to compel Southwest to vacate Love Field.[2]

1. Despite its contract, Braniff has refused to close operations from Love, and Texas International has now reopened there under the umbrella of a state-court injunction.

2. The major ordinance which was before the court below and on which it based its decision was the 1968 Regional Airport Concurrent Bond Ordinance. This provides, in pertinent part, that the cities are to phase out Certificated Air Carrier Services to their existing airfields such as Love to the extent "legally permissible" and not in violation of "presently outstanding legal commitments or covenants prohibiting such action." The ordinance defines the operations to be phased out as follows:

 " 'CERTIFICATED AIR CARRIER SERVICES' mean aircraft operations of the following types when operating on a regular and continuing basis, to wit:

 "(1) interstate services conducted by commercial air carriers according to published flight schedules and holding certificates of public convenience and necessity or similar evidences of authority issued by the Civil Aeronautics Board of the United States of America or any successor agency thereto;

 "(2) services conducted by foreign air carriers according to published flight schedules holding permits or similar evidences of authority issued by the Civil Aeronautics Board or any successor agency thereto or by any other agency or department of the United States of America; and

 "(3) intrastate services conducted by commercial air carriers according to published flight schedules and holding certificates of public convenience and necessity or similar evidences of authority issued by the Texas Aeronautics Commission of the State of Texas or by any successor agency.

 "It is provided, however, that this term shall not include services provided by commercial 'air taxi' operators meeting the requirements for exemption provided from time to time by any rules and regulations of the Civil Aeronautics Board, by the Texas Aeronautics Commission or by any other agency of the United States of America or the State of Texas having jurisdiction to provide such exemptions."

Southwest urges, and the court below found, that the ordinance is artfully worded to eliminate its intrastate scheduled service only, since Texas does not regulate intrastate service of CAB-certificated interstate carriers and the ordinance does not require that these be moved. This seems correct, since none of the intrastate runs of Southwest's interstate competitors is certificated by the TAC and hence (3) of the above ordinance, while applying to Southwest, has no effect on them. At oral argument, this Court commented somewhat on this curious and unpleasant feature of the ordinance. Thereafter, both cities enacted and furnished to us ordinances closing their individual municipal airports to a broader range of uses. Dallas' provides, in pertinent part:

 "From and after May 1, 1974, Dallas Love Field and Redbird Airport will be closed to all regularly scheduled flights of aircraft that transport passengers or property for hire, except regularly scheduled flights of aircraft that transport passengers or property for hire between only Dallas Love Field or Redbird Airport and Dallas/Fort Worth Regional Airport."

■ Were Love Field a private airfield, constructed without public funds, it may be assumed that its owner could exclude anyone he liked. Love, however, received substantial federal assistance and therefore must ". . . be available for public use on fair and reasonable terms and without unjust discrimination; . . . ." 49 U.S.C. § 1718(1), formerly 49 U.S.C. § 1110. In addition, the Supreme Court of Texas long ago held that a Texas Home Rule municipality might not, by denying to common carriers use of its streets built in part at state and federal expense, interfere with their use of state highways passing through the city. Such actions were seen, in their extra-municipal effect, as going beyond the power of local government. City of Arlington v. Lillard, 116 Tex. 446, 294 S.W. 829 (1927); City of Fort Worth v. Lillard, 116 Tex. 509, 294 S.W. 831 (1927). The analogy seems close and valid.

■ Appellant cities urge that reasonable classification of *uses*—as distinguished from selection of *users*—does not constitute unjust discrimination.[3] We assume, without deciding, that this is so.[4]

If so, the question becomes, as to Texas intrastate flights, who is to make these just discriminations by use-classifications?[5] It has a simple answer. In a recent decision, the Texas Supreme Court had occasion to consider the powers of the Texas Aeronautics Commission. It first correctly noted:

> In all matters of flying safety, such as the air worthiness of the air-

craft and the skill of its operators, Air Southwest would be regulated by the Federal Aviation Agency. All Air Southwest aircraft and pilots would have federal certificates. However, by flying only in intrastate commerce and by not interlining with any CAB certificated carrier, making no connection for passengers or baggage, Air Southwest will not require a certificate from the federal agency in charge of economic regulations, the Civil Aeronautics Board. Congress has not pre-empted the field of the economic regulation of air carriers, and the states have the power to act so long as there is no conflict with federal law. 49 U.S.C.A. § 1301(3) and (10), and § 1371; Western Air Lines Inc. v. California, 42 Cal.2d 621, 268 P.2d 723 (1954), cert. denied, 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677; *see* Island Airlines, Inc. v. C.A.B., 331 F.2d 207 (9th Cir. 1964); Island Airlines, Inc. v. C.A.B., 363 F.2d 120 (9th Cir. 1966); Comment, 47 Texas L.Rev. 275 (1969).

Our Brethren of the District of Columbia Circuit emphatically agree and have so held in a case involving this general controversy. Texas Int'l Airlines, Inc. v. C.A.B., 154 U.S.App.D.C. 113, 473 F.2d 1150 (1972). And having determined that regulatory power over Texas intrastate air carriers still reposed with the State of Texas, the Texas Court further noted:

> The decision as to where the public interest lies and what air service is

---

Even so, we note that charter passenger flights by any size or type of plane remain untouched.

3. See Aircraft Owners & Pilots Ass'n v. Port Authority of N. Y., 305 F.Supp. 93 (E.D.N.Y.1969).

4. If it is not so, then clearly neither Dallas nor any other authority can require Southwest to move from Love so long as it remains open to *any* use by aircraft.

5. As to interstate flights, of course it would be the CAB, which appellants admit is authorized to, and does, designate points of origin and destination. The CAB has not, however, undertaken to assert jurisdiction, if any it has, over purely intrastate carriers such as Southwest, and indeed appears presently to acquiesce in state licensing of intrastate portions of interstate routes. See People v. Western Airlines, Inc., 42 Cal.2d 621, 268 P.2d 723, appeal dismissed, 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (1954).

best for Texas must be made by the Texas Aeronautics Commission.

Texas Aeronautics Comm'n v. Braniff Airways, Inc., 454 S.W.2d 199 (Tex. Sup.1970).

 The power to designate "routes" has, from times antedating any relevant to this case, been confided to that Commission.[6] It seems self-evident that points of origin and destination are part of every "route," particularly short-haul ones.[7] Indeed, to hold that a city could deny the use of public facilities to an airline certificated to it by the Texas Aeronautics Commission would cripple, if not destroy, the Commission's powers to control intrastate routes.[8] Any city having only municipal airports would have an absolute veto power over routes to and through it—routes which involve the convenience and necessity of the state public, not merely that of the city. And a partial veto would exist even where other facilities existed. Southwest has been certificated by the Commission into Love Field and directed to continue service there until told otherwise. At a minimum, this constitutes Texas' exercise of its power to determine that Southwest's is not an improper use of Love Field. Dallas being Texas' creature, it, may not declare otherwise.[9] The cities' road to relief passes by the Texas Aeronautics Commission. They cannot reroute it by enacting ordinances in varying forms of words on a subject which is beyond their powers.[10]

Other grounds are urged in support of the judgment of the court below, including the asserted discriminatory effect on Southwest of the 1968 Regional Airport Concurrent Bond Ordinance noted at footnote 2 above and the effect of covenants in outstanding airport revenue bonds that Love will be kept open for scheduled airlines and general use so long as the bonds are unpaid. In view of our disposition of the case, we think it unnecessary to discuss these.

Affirmed.

6. Art. 46c–6, sub. 3, Vernon's Ann. Texas St., as amended.

7. The Attorney General of Texas has ruled that the Commission's powers extend to routes entirely *within* one city. Op.Att'y Gen'l of Texas, September 2, 1969. Here, little but designating points of take-off and landing is involved.

8. Cf. City of Arlington v. Lillard, 116 Tex. 446, 294 S.W. 829 (1927); City of Fort Worth v. Lillard, 116 Tex. 509, 294 S.W. 831 (1927). Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945 (1949), is not to the contrary in upholding, as it does, reasonable regulation by the municipality of pickup and discharge points within the town for passengers of state-certified buslines.

9. Dallas is a Home Rule City. The Texas Constitution, Art. 11, § 5, provides that no ordinance of such a city may be inconsistent with the State's general laws. Such a law is the Texas Municipal Airports Act, which grants to municipalities power to establish and control the use of airports, but provides in the same breath:

"No ordinance, resolution, rule, regulation or order adopted by a municipality pursuant to this Act shall be inconsistent with, or contrary to, any Act of the Congress of the United States or laws of this State, *or to any regulations promulgated or standards established pursuant thereto.*" (footnote omitted; emphasis added) Art. 46d–7, V.A.T.S.

10. The question whether an ordinance entirely closing Love Field to air traffic would be within Dallas' powers is not presented here, and we, of course, imply no view upon it.