Ferris J. ALEXANDER, Benedict Jochim, and Vegas Cinema Corporation of Minneapolis, Inc., d/b/a Avalon Theatre, Appellees,

v.

CITY OF MINNEAPOLIS, a municipal corporation; William A. Nordrum, Jr., individually and as Zoning Supervisor for the City of Minneapolis; and Anthony Bouza, individually and as Chief of Police of the City of Minneapolis, Appellants.

No. 82–1385.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1982.

Decided Jan. 28, 1983.

As Amended Feb. 23, 1983.

See also D.C., 545 F.Supp. 586.

John H. Weston, Robert A. DePiano, Brown, Weston & Sarno, Beverly Hills, Cal., for appellee Vegas Cinema Corp.

Robert J. Alfton, City Atty., by Allen B. Hyatt, Asst. City Atty., Minneapolis, Minn., for appellants.

Randall D.B. Tigue, Minneapolis, Minn., for appellees Alexander and Jochim.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

The District Court[1] held, in a suit for declaratory and injunctive relief brought by owners and operators of "adult" movies and bookstores, that Minneapolis Code of Ordinances § 540.410, a zoning ordinance, violated the First and Fourteenth Amendments. *Alexander v. City of Minneapolis*, 531 F.Supp. 1162 (D.Minn.1982). Section 540.410 attempted to regulate the establishment and operation of various "adults-only" enterprises including adults-only bookstores, adults-only theatres, saunas, massage parlors, and "rap parlors."[2] The Dis-

---

1. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota.

2. We were informed at the oral argument that "rap parlors" are establishments at which men may converse with women who are not fully

trict Court found as a fact that access to adult bookstores and movies would be significantly restricted by the ordinance. Because this finding is not clearly erroneous, we affirm.

Section 540.410 was enacted in May 1977 to insure that certain businesses do "not contribute to the blighting or downgrading of the surrounding neighborhood." § 540.-410(a). It sets forth two primary restrictions. The first forbids an adults-only facility from operating "within five hundred (500) feet of a residentially zoned district, an office-residence zoned district, a church, a state-licensed day care facility and public educational facilities which serve persons age seventeen (17) or younger, an elementary school or a high school." § 540.410(c). The second forbids an adults-only facility from operating within 500 feet of any other adults-only facility. § 540.410(d). The ordinance regulates the continued operation of already existing establishments as well as the location of new ones. Existing adult facilities were required to conform to the ordinance, by moving to a new location if necessary, by July 1, 1981. § 540.410(f).

There are presently five adults-only theatres in Minneapolis. Under § 540.410 all are in prohibited areas. Plaintiff Vegas Cinema owns one; the other four are owned by the plaintiff Alexander and managed by the plaintiff Jochim. There are approximately ten adult bookstores in Min-neapolis. The ordinance would preclude the continued operation of at least seven and possibly nine of them. Alexander owns six of the bookstores, of which between three and five are prohibited by the ordinance.[3]

In *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Supreme Court upheld a Detroit zoning ordinance regulating the establishment of new adult theatres.[4] Justice Stevens, writing for a plurality of four, analyzed the case in terms of whether the "statutory classification [was] unconstitutional because it [was] based on the content of communication protected by the First Amendment," *id.* at 52, 96 S.Ct. at 2443, and responded in the negative. (Everyone concedes that the communication at issue here is protected by the First Amendment. The ordinance has nothing to do with obscenity as such.) By doing so he carved out a limited exception to the general prohibition against content based regulations. See *Heffron v. International Society For Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981). The plurality recognized, however, that a similar content-based zoning ordinance would not withstand constitutional attack if it had the effect of greatly restricting access, and suggested that the result of *Young* would have been "quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." *Young, supra,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453

clothed. The complaint attacked the ordinance only as applied to movies and bookstores. No question is raised as to the validity of the ordinance in respect of the other "adult" uses it regulates, and we express no view on that issue.

3. The parties disagree as to whether certain facilities fall within § 540.410(c). The question is whether certain buildings within 500 feet of adult bookstores are churches or schools within the meaning of the ordinance. The Minnesota state courts have not interpreted this section, but for purposes of this case it does not matter whether three, four, or five of Alexander's bookstores would be in violation of the ordinance.

4. The zoning ordinance in *Young v. American Mini Theatre* was similar to the Minneapolis ordinance in that it had the effect of dispersing clusters of adults-only facilities. It provided that an adult theatre could not be located within 1,000 feet of any two other regulated uses or within 500 feet of a residential area. (The provision with respect to residential areas was added by amendment after the District Court had ruled in *Young,* and the Supreme Court's opinion does not directly address its validity.) The regulated uses covered by the ordinance were hotels or motels, pawnshops, pool or billiard halls, public lodging houses, secondhand stores, shoeshine parlors, taxi dance halls, adult bookstores, cabarets, establishments for the sale of beer or intoxicating liquor for consumption on the premises, adult theatres, and "mini" theatres. As far as movies and bookstores were concerned, however, the Detroit ordinance did not affect any existing uses. That is an important difference between the Detroit and Minneapolis ordinances.

n. 35. But because even after the ordinance was passed "myriad locations in the City of Detroit" remained where new adult theatres could open, the statute was valid. In his concurring opinion, Mr. Justice Powell viewed *Young* as "presenting an example of innovative land-use regulation, *implicating First Amendment concerns only incidentally and to a limited extent.*" *Id.* at 73, 96 S.Ct. at 2453 (emphasis added). He looked to whether the ordinance imposed any content limitations on the creators of adult movies and whether it restricted in any significant way the public's right to patronize these movies. He found that despite the ordinance "the number of adult movie theaters in Detroit will remain approximately the same" and suggested that he would not have upheld the ordinance if this were not the case. *Young v. American Mini Theatres, supra,* 427 U.S. at 79, 96 S.Ct. at 2456.

The Court had an opportunity further to explain the basis of *Young* in *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). There, the Court invalidated a Mt. Ephraim, New Jersey, ordinance banning nude dancing. It distinguished the Mt. Ephraim ordinance from the Detroit one, noting that the latter "did not affect the number of adult movie theatres that could operate in the city," *id.* at 71, 101 S.Ct. at 2184, and quoted Justice Stevens's observation in *Young* that the case would come out quite differently " 'if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech.' " *Id.* at 76, 101 S.Ct. at 2186 (quoting *Young v. American Mini Theatres,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35).

This Court recently addressed a similar issue in *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659 (8th Cir.1981) (en banc). The City of North Little Rock, Arkansas, enacted an ordinance which would have prevented a newly refurbished and licensed adult theatre as well as a newly licensed adult bookstore from opening. This Court invalidated the ordinance in part because it "had the effect of virtually suppressing public access to sexually oriented (but nonobscene) adult entertainment." *Id.* at 662. Those

courts of appeals which have addressed this kind of issue have reached similar results. *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1213–14 (5th Cir.1981); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981); *cf. Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821, 827 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980).

The defendants concede that if the ordinance significantly restricted access to sexually oriented entertainment it would be unconstitutional, but contend that it does not. This contention is squarely in conflict with the factual findings of the District Court. It found that the Minneapolis ordinance not only regulates new adult facilities but also affects those in existence at the time it was enacted. Under it all five adult theatres must relocate, and so must between seven and nine of the ten adult bookstores. These establishments will have to compete with another eighteen saunas, massage parlors, and "rap parlors" (Tr. 100, 131–32) for relocation space. The ordinance severely circumscribes the area to which adults-only facilities may relocate. There are at most twelve possible legal sites for relocation. *Alexander v. City of Minneapolis,* 531 F.Supp. 1162, 1171 (D.Minn.1982). "[E]nforcement of § 540.410 would have the effect of substantially reducing the number of adult bookstores and theatres in Minneapolis," and "no new adult bookstores or theatres would be able to open." *Id.* at 1172.

These findings are not clearly erroneous. Zoning Supervisor William Nordrum, one of the defendants in this case, conceded that if the maximum space physically permitted under the ordinance (including the 500-foot radius required around every adults-only facility) were used, there would be physical space to relocate only twelve adult facilities (Tr. 141). He testified there would be substantially fewer adult bookstores.

Q So as I understand your testimony, there are approximately 30 adult uses that presently exist within the City of Minneapolis?

A  Yes.

Q  And of those, five, as I understand, will be permitted to remain?

A  Unless some receive extensions from the Minneapolis City Council, that's correct.

Q  Isn't it true that, assuming you could find locations for as many possible in the white area [5] and draw a 500-foot radius, you probably wouldn't be able to relocate more than a dozen within the white area?

A  That sounds correct.

Q  And isn't it possible that if the ordinance were fully implemented, there would be no adult theaters at all within the City of Minneapolis?

A  Unless there were extensions granted by the City Council, that's correct.

Q  And there would be substantially fewer adult bookstores in the City, is that correct?

A  Yes.

(Tr. 140–41).

Theoretically the adult facilities in question could stay in their present locations if they reduced their inventory of "sexually oriented material" to below 40%. § 540.-410(b)(1), (2). Moreover, under § 540.410(g) the city council, upon the recommendation of the zoning administrator, may allow an adult facility an extension beyond the July 1, 1981, relocation deadline.[6] These provisions, however, do not significantly reduce the negative impact of the ordinance on the right to purvey lawful and protected sexually oriented material and the public's right of access to it.  Mr. Nordrum testified that extensions would be granted only for the purpose of allowing proprietors to recoup their initial investments and only if the property could not be put to any other use (Tr. 79).  This being the case we agree with the District Court that "[a]n administrative extension is not realistic." *Alexander v. City of Minneapolis, supra,* 531 F.Supp. at 1170.  In addition, there was sufficient evidence indicating that adult facilities attempting to comply with the 40% provision of §§ 540.410(b)(1) and (2) would face great practical difficulties in doing business (Tr. 206, 230, 265).  Moreover, compliance with §§ 540.410(b)(1) and (2) would necessarily mean restricted access to this type of constitutionally protected material.

The District Court permissibly found that § 540.410 would greatly suppress access to adult theatres and bookstores.[7]  The ordinance can therefore not survive under the criteria either of the plurality opinion in *Young,* or of the concurrence.

The judgment is

Affirmed.

---

**5.** This reference is to a zoning map or maps received into evidence at trial.  Apparently, the "white area" on the map depicted the only area of the city within which the displaced businesses might relocate.  Tr. 31–39.

**6.** In general, nonconforming uses already in place when a new zoning ordinance is enacted in Minneapolis are allowed to continue operating at their existing location.  They are "grandfathered in," as the saying goes.  Adult uses are not given anything like this privilege under the ordinance under attack here.  Plaintiffs argue that this distinction is a discrimination against protected speech, and that the ordinance is invalid on this ground without regard to any other basis of attack.  We need not reach that question.

**7.** Plaintiffs argue that there are as few as three sites actually available for leasing at the present time (or depending on how one interprets the ordinance only one).  They also argue that these three sites are not economically suitable for relocation.  Because we find that the twelve legally permissible relocation sites do not supply sufficient access to the constitutionally protected adult uses in question we need not look to their actual availability or economic feasibility or how these factors would affect the constitutionality of the ordinance.