**OLMOS REALTY COMPANY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–84–00176–CR.**

Court of Appeals of Texas, San Antonio.

May 31, 1985.

**712**

Donald Killingsworth, San Antonio, for appellant.

Charles S. Frigerio, Asst. City Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

**OPINION**

BUTTS, Justice.

Appellant Olmos Realty Company appeals from a judgment of the county probate court; a jury found Olmos Realty guilty of violating chapter 42 of the San Antonio City Code and City Ordinance No. 49724 [1] (a zoning ordinance of the City of San Antonio prohibiting adult theatres, in addition to other adult establishments, from locating within 500 feet of a residential area). A fine of $75.00 was imposed. Originally heard in municipal court, a fine of $200.00 was imposed after entry of a nolo contendere plea. Since the present fine does not exceed $100.00, appellant challenges only the constitutionality of the city ordinance, pursuant to and limited by TEX.CODE CRIM.PROC.ANN. art. 4.03 (Vernon Supp.1985). We affirm.

The City Council enacted the challenged ordinance in 1978. The Olmos Theatre did not begin to operate as an "adult" theatre until March of 1983. On March 17, 1983, and again on March 24, 1983, David Cadena, Jr., senior inspector for the department

1. Section 1.

    \*     \*     \*     \*     \*     \*

Adult Motion Picture Theater is a business place where motion pictures are shown to paying customers when such place is used for presenting material having as its dominant theme, or distinguished or characterized by, an emphasis on the depiction or description of specified anatomical areas or specified sexual activities for observation by patrons, and where admittance to such showings is totally limited to adults. 'Specified sexual activities' means acts of masturbation, sexual intercourse, homosexuality or lesbianism, sodomy, fellatio, sado-masochism, or physical contact with a person's (own or another's) specified anatomical areas. 'Specific anatomical areas' means any showing of either the adult or minor human male or female genitals, anus, or pubic area with less than a full opaque covering, or the showing of the post-puberty female areola with less than a full opaque covering.

Section 2. Chapter 42 (Zoning) of the City Code of the City of San Antonio is hereby amended so as to add to Division 6 (Supplementary Regulations), Section 42–82 (Supplementary use regulations) a sub-section (d) reading as follows:

(d) *Adult entertainment restrictions.*

(i) Notwithstanding any other provisions of this chapter, no adult bookstore, adult entertainment establishment, or adult motion picture theater shall be established or maintained within five hundred feet of property classified as any of the following: A, B, C, Temporary A, Temporary R–1, D, R–A, R–1, R–2, R–2A, R–3, R–4, R–5, R–6, and all Planned Unit Development Residential classifications.

Measurement shall be made in a straight line from the nearest boundary of property so zoned to the nearest part of the building in which such use is made, if the same commercial activity occupies an entire building; provided that in the case of a building which is divided into separate rental or ownership spaces devoted to different uses or enterprises, measurement shall be made to such space or unit of the building in which such use is made; and provided that if the activity is an outdoor (drive-in) movie, measurement shall be made to the nearest part of the land devoted to such use.

    \*     \*     \*     \*     \*     \*

of building inspectors for the City of San Antonio, issued two violation notices to the Olmos Theatre manager, requiring the theatre to close because of a violation of the city ordinance at issue. Each time Cadena saw movies at this theatre which he characterized as sexually explicit adult theatre. He returned again on April 6, and despite the violation notices, the theatre continued to show adult fare. At that time he filed a complaint initiating the suit at bar.

■ The classification of a theatre as adult is determined by the character of the motion picture which is exhibited. If the theatre is used to present material distinguished or characterized by an emphasis on matters depicting, describing or relating to specified sexual activities or specified anatomical areas, it is an adult establishment. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 53, 96 S.Ct. 2440, 49 L.Ed.2d 310, 316 (1976).

The parties to the suit concede that although the communication at issue here is protected by the First Amendment, the ordinance has nothing to do with obscenity as such. Nor is it challenged that the Olmos Theatre is less than 500 feet from a residential area, thereby encompassed by the restrictions of the ordinance. Olmos Realty also concedes that the ordinance is constitutional on its face, challenging in its sole point of error the constitutionality of the ordinance *as applied* in three respects: (1) it is not based on a valid zoning plan or scheme; (2) it denies the public access to constitutionally protected speech; and (3) it denies adult theatre operators access to the market.

Cadena testified that: (1) when the ordinance was passed in 1978, there were 26 adult theatres in San Antonio; (2) now there may be as few as three; (3) however, if children are admitted to see so-called adult fare, the theatre is no longer classified as an adult theatre and is therefore not subject to the zoning regulation of the ordinance; (4) there may be other adult theatres in San Antonio that he does not know about; (5) owners of adult theatres may apply to the city for a waiver of the

500 foot requirement and one, in fact, was recently granted.

James Ohmart, vice president of Theatres West, Inc. and a witness for Olmos Realty, testified that there are many potential places remaining within the City of San Antonio that could be possible future sites for adult theatres that are both economically viable and meet the zoning requirements.

In order to evaluate the constitutionality of the ordinance, we now apply the tests as set out in *O'Brien v. United States*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) and *Young, supra* to the facts of this case.

■ In *United States v. O'Brien*, the United States Supreme Court sets forth a four-prong test to determine when a governmental interest sufficiently justifies the regulation of expressive conduct. Justification is shown: (1) if regulation is within the constitutional power of the government; (2) if regulation furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. We will address each prong of the test:

(1) the cases are legion which sustain the authority of a municipal government to pass land use regulations even in the face of economic detriment to the commercial enterprise so regulated. *See, e.g., Zahn v. Board of Public Works of the City of Los Angeles*, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074 (1927); *Town of Ascarate v. Villalobos*, 148 Tex. 254, 223 S.W.2d 945, 950 (1949).

(2) the governmental interest in preserving the integrity of its residential neighborhoods and the quality of life in San Antonio is immediately apparent;

(3) the governmental interest in developing sound neighborhoods is in no way connected with the suppression of free expression; in fact, the ordinance was in exist-

ence for four years before the Olmos Theatre changed its fare and became an adult theatre. *Young,* 427 U.S. at 54, 96 S.Ct. at 2444; *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 662 (8th Cir.1981);

(4) finally, the 500 feet zoning restriction is no greater than is essential to satisfy such an interest. (The Detroit ordinance in *Young, supra,* has precisely that requirement.)

■ In *Young v. American Mini Theatres, Inc.,* 427 U.S. at 70, 96 S.Ct. at 2452, 49 L.Ed.2d at 326, the U.S. Supreme Court carved out a limited exception to the general prohibition against content based regulations of matter covered by the First Amendment. While agreeing that the First Amendment protects sexually explicit fare from total suppression, it also held that the State may legitimately use the content of these materials as the basis for placing them in a classification from other motion pictures. *Id.* An ordinance, such as the one in dispute, will not be invalidated merely because it includes a zoning restriction involving the commercial exploitation of material protected by the First Amendment. *Id.* 427 U.S. at 62, 96 S.Ct. 2448, 49 L.Ed.2d at 321.

■ We find that the zoning ordinance enacted by the City of San Antonio meets the criteria established in both *O'Brien, supra* and *Young, supra.* It is rationally related to the legitimate concerns of the municipality. It is a valid exercise of the City's police power and is designed to preserve the integrity of San Antonio's neighborhoods, not to proscribe speech in the guise of adult movies. *Compare Young, supra* (Detroit ordinance constitutional because other adult theatres could be operated under the terms of the ordinance) *with Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (ordinance unconstitutional because it effectively banned live nude dancing in governmental unit); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981) (ordinance unconstitutional because it effectively prohibits all adult theatres); *Alexander v. City of Minneapolis,*

698 F.2d 936, 937–8 (8th Cir.1983) (ordinance unconstitutional because would result in the closing down of all adult theatres in Minneapolis).

■ Moreover, the presumption is in favor of the validity of an ordinance and the burden of showing its invalidity rests on the party attacking it. *Town of Ascarate, supra.*

■ We also find that while the number of adult theatres has been reduced since the passage of the ordinance, it has not greatly reduced access, either to those who show or those who view these movies. *Compare Alexander, supra* at 937. The ordinance simply addresses the places at which this type of expression may be presented. We find under these circumstances the ordinance is not directed solely at the Olmos Theatre but is a legitimate land use regulation.

Under the guidelines set out in *O'Brien, supra,* and *Young, supra,* we therefore hold that the zoning ordinance is constitutional and not violative of the First Amendment. In upholding its constitutionality, we underscore that it does not eliminate adult movie fare from San Antonio by making it impossible for an operator of an adult movie theatre to comply with the ordinance. The ordinance as applied to Olmos Realty forbids the operation of the adult movie theatre at its present location which is within 500 feet of a residential area; it does not forbid operation of an adult theatre in San Antonio. Similarly, although the ordinance restricts access of adult moviegoers to this particular theatre, it was shown there are, nevertheless, actual and innumerable potential adult movie theatre locations throughout San Antonio. Point of error one is overruled and the judgment is affirmed.