Jessie ORRELL *v.* CITY OF HOT SPRINGS

92-254                                                   844 S.W.2d 310

Supreme Court of Arkansas
Opinion delivered December 14, 1992

*Hurst Law Offices*, by: *Q. Byrum Hurst, Jr.*, for appellant.

*Neil V. Pennick*, for appellee.

DAVID NEWBERN, Justice. In this case the constitutionality of an ordinance of the City of Hot Springs has been challenged as being in violation of the First Amendment guarantee of freedom of speech. The ordinance regulates "sexually oriented businesses" in Hot Springs by setting qualifications for licensing and assuring geographic disbursement within the City. The appellant, Jessie Orrell, who operates businesses which would require licenses pursuant to the ordinance, argued the ordinance (1) was unconstitutional because it did not guarantee a speedy determination of eligibility and (2) because it left so few locations for such businesses that it amounted to an unconstitutional deprivation of the right to speak or communicate.

The Trial Court held the ordinance was not unconstitu-

tional. We must reverse because we agree with Mr. Orrell's first argument.

Mr. Orrell's two establishments feature topless (nude from the waist up) female dancers. The "Bottoms Up" club, located at 415 Albert Pike, was opened sometime in January of 1990. The Centerfold Entertainment Club, located at 214 West Grand, opened sometime later. The City had adopted, in 1987, Ordinance No. 3938 (Ordinance) entitled "SEXUALLY ORIENTED BUSINESS ORDINANCE," and Orrell's businesses fall within its definition of "sexually oriented business."

Apparently there was no effort to enforce the Ordinance against either establishment, but early in 1991 Mr. Orrell learned the Hot Springs City Manager and other officials felt his establishments violated the Ordinance. He filed a complaint for injunctive relief and declaratory judgment seeking a determination whether the two establishments were "sexually oriented businesses" as defined by the Ordinance; whether they were excepted due to "grandfather" provisions; and whether the Ordinance was constitutionally defective in its scope and in the geographic limitations imposed.

A hearing was held, and it was shown that the "Bottoms Up" Club was in a location consistent with the ordinance, but the Centerfold Entertainment Center was not. The evidence also established that there were at most only four sites within the City available for location of such a business. Because of the requirement in the Ordinance for a substantial distance between these businesses it was probable, but not shown definitely, that no more than one such business could be located in each of these four areas. The Court held the ordinance was not unconstitutional and that the geographic restrictions were not unreasonable.

### 1. Prior restraint

The Ordinance in Section 3 requires a license for the operation of a sexually oriented business as defined in Section 2. Section 4 provides, in pertinent part:

> (a) The Administrator MUST approve the issuance of the license within 30 days after receipt of an application unless he or she finds one or more of the following to be

true:

\*\*\*

(5) The premises to be used for the sexually oriented business have not been approved by the health department, fire department or the appropriate building official as being in compliance with applicable laws and Ordinances.

\*\*\*

■ In *Freedman v. Maryland*, 380 U.S. 51 (1965) the Court held that the failure to place limitations on the time within which a censorship board decision maker must make a determination of obscenity is a species of unbridled discretion which constitutes a prior restraint on the First Amendment guarantee of freedom of speech. While prior restraints are not unconstitutional *per se*, any system of prior restraint bears a heavy presumption against it's constitutional validity. *FW/PBS, Inc. v. City of Dallas*, 110 S.Ct. 596 (1990).

■ There are two evils not to be tolerated in such schemes. First, a scheme that places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue a license is impermissible. *Freedman v. Maryland, supra*, at 59. Like a censorship system, a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where procedural safeguards are inadequate to ensure prompt issuance of the license.

■ Three procedural safeguards are necessary to ensure expeditious decisionmaking. (1) Any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must appear available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court. *Freedman v. Maryland, supra* at 58-60.

In *FW/PBS, Inc. v. City of Dallas, supra*, a Dallas ordinance required issuance of a license within 30 days of receipt of an application, but it conditioned the issuance upon approval by

other municipal inspection agencies without setting a time limit for inspections by those agencies. As a result, a majority of the Court concluded that the timeliness requirement posed in the *Freedman* case had not been met. The ordinance failed to provide an effective time limitation on the licensing decision, and it also failed to provide an avenue of prompt judicial review so as to minimize suppression of speech in the event of a license denial, thus it was unconstitutional insofar as it was enforced against businesses engaged in First Amendment activity.

■ The Hot Springs ordinance is identical to the Dallas ordinance in that the administrator must approve the issuance of a license within 30 days *unless* the premises have not been approved by the health department, the fire department, or appropriate building officials as in compliance with other applicable laws and ordinances. This is the same defect found in the *FW/PBS* v. *City of Dallas, supra*, and from which the Supreme Court concluded that the licensing scheme lacked adequate procedural safeguards to stand constitutional muster. Thus Ordinance 3938 clearly constitutes an impermissible prior restraint on speech and must fail.

### 2. Alternative sites

The generally stated justification for ordinances such as the one reviewed here is that they are "content neutral" and have as their purpose the control of undesirable activities such as crime, particularly prostitution, often found near clusters of sexually oriented businesses. Their purpose is not to stifle speech but to prevent secondary effects which are subject to the police power of government.

Like the Supreme Court in *FW/PBS, Inc.* v. *City of Dallas, supra*, we find it unnecessary to reach the issue whether the ordinance was properly viewed as a content neutral time, place, and manner restriction reasonably aimed at the secondary effects arising out of sexually oriented businesses, but a brief discussion of the second argument with regard to the reasonableness of the geographic requirements is appropriate.

■ In *Renton* v. *Playtime Theaters, Inc.*, 475 U.S. 41 (1986), ordinances regulating sexually oriented businesses were held facially valid if they (1) were designed to serve a substantial

government interest and (2) allowed for reasonable alternative avenues of communication. The Supreme Court made it clear that content neutral time, place, and manner regulations are appropriate to control the location and proliferation of sexually oriented businesses so long as there are opportunities available within the city for the placement of these businesses.

The record presented in this case showed that there were four areas remaining in Hot Springs, after passage of the ordinance, where a sexually oriented business could have been legally located. It is not clear, however, whether these sites are actually available to the operators of such businesses. It is also unclear whether one of the sites already has a regulated business within the area and therefore may be unavailable for location of another such business.

In *Walnut Properties, Inc.* v. *City of Whittier*, 861 F.2d 1102 (9th Cir. 1988); *Alexander* v. *City of Minneapolis*, 713 F. Supp. 1296 (D. Minn. 1989); and *Alexander* v. *City of Minneapolis*, 698 F.2d 936 (8th Cir. 1983) (*Alexander I*), identical restrictions which essentially reduced the number of such business which could legally operate to a marginal number were found to violate the First Amendment. In the *Alexander I* case the reduction would have been from sites accommodating 30 existing business to 12 relocation sites. In the *Walnut Properties* case the ordinance had identical restrictions which would permit businesses to relocate to only three sites in the City of Whittier.

While our holding in this case does not encompass this point, we recite our concern with respect to the ultimate practical effect of a law such as Ordinance 3938 for the benefit of guidance in cases which may arise in the future.

Reversed.