Karen M. ESPINOZA, Appellant,

v.

Fred THOMA, Chairman of the Board of Directors, William Ramsey, Vice-Chairman, Johnnie Hayden, Secretary-Treasurer, Donald Stern and Robert Brennan, Members of the Board of Directors, and Jerome Erdman, Executive Director, Individually and in their official capacities, Robert Lager, Manager-Employee Relations, Anthony Kidd, Personnel Supervisor, Individually and in their official capacities, Appellees.

No. 77–1954.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1978.

Decided Aug. 2, 1978.

Clyde A. Christian, Omaha, Neb., for appellant.

Timothy M. Kenny, Omaha, Neb., for appellees; Frederick A. Brown, Omaha, Neb., on the brief.

Before HEANEY and STEPHENSON, Circuit Judges, and BECKER,* Senior District Judge.

STEPHENSON, Circuit Judge.

Karen Espinoza appeals from the denial of her civil rights complaint (42 U.S.C. § 1983) charging discrimination in refusing her employment with Metro Area Transit (MAT), a corporation owned by the Transit Authority of the City of Omaha, on the basis of her sex and national origin. The district court [1] found there was no evidence of race discrimination and that Ms. Espinoza was denied employment pursuant to MAT's no-spouse rule which was not constitutionally defective.[2] We affirm.

Ms. Espinoza, an American citizen of Mexican-American descent, applied for a position as bus driver with MAT in March 1974. During her initial interview with Robert Lager, employee relations manager, Lager suggested that she was too small to handle the large buses in use at that time

---

* The Honorable William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. The district court found that the charge of racial discrimination was wholly unsupported by the evidence. This finding is not challenged on appeal.

but indicated that a job in the maintenance department might be more suitable. In May 1974 Espinoza filed a complaint against MAT before the Nebraska Equal Opportunity Commission pursuant to Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that MAT's refusal to hire her based on height and weight requirements was unlawful. Subsequently, on June 28, 1974, Espinoza and MAT entered into a conciliation agreement which provided, inter alia, that MAT would hire Espinoza as a bus operator trainee no later than September 18, 1974, provided, however, that Espinoza meet "other qualifications required of bus drivers, i. e., physical examination, driving record, etc." Espinoza waived her rights to refile a charge against MAT and covenanted not to sue MAT with respect to the matters conciliated subject to MAT's compliance with the conciliation agreement.

Espinoza took the pre-employment physical examination for the bus driver position on July 22, 1974. The examination disclosed she was three months pregnant and therefore unable to pass the physical examination requirements. However, she was informed that she should return after delivery for another physical examination.

Espinoza returned to MAT in February 1975 and began the application process anew. She passed the physical examination and arrived on June 18, 1975, for the training session. At that time she was informed by Lager that because of the fact that she was living with a MAT bus driver, Norman Hardin, MAT could not hire her in light of its operating policy, then in effect, which states:

> Members of the immediate family, spouse, parent, child, of a present employee are not to be considered for employment by MAT. The employment of other close relatives is discouraged. This does not affect relatives presently working for the authority. (Policy No. 3).

Lager testified that he determined that under the above policy:

> [W]e would not hire people living together in an espoused relationship. * * * An espoused relationship as we define it means that this is two people living together, sharing bed and board, siring children, sharing financial, recreational, social activities together, along with the normal cares and woes of raising a family, without the benefit of a marriage license or marriage ceremony.

Under the circumstances Lager interpreted the MAT policy as applying to Espinoza, thereby foreclosing her employment with MAT.

Thereafter Espinoza again filed complaints charging discrimination by MAT with the Nebraska Equal Opportunity Commission, which ordered conciliation efforts. However, no conciliation agreement was entered into and the matter was set for a hearing April 21, 1976. Espinoza elected to withdraw the charge of discrimination at that time and filed her complaint in the district court, claiming in substance: (1) that the MAT Policy No. 3 is illegal and void as applied to her since she is a single woman and not a spouse; and (2) that the failure to retain Espinoza because of MAT Policy No. 3 violated the conciliation agreement which required MAT to hire Espinoza and resulted in a continuance of the original incident of discrimination against Espinoza.

The district court held that the preclusion of spouses is a reasonable classification which bears a fair and substantial relation to the objectives of the policy to eliminate the potential for serious conflicts that might affect job performance; that the classification is neither arbitrary nor capricious; and that there was no evidence which would indicate that all persons similarly circumstanced as Espinoza would not be treated alike. Furthermore, that the interpretation of the word "spouse" to include a person who lives in an espoused relationship, although without the benefit of legal marriage,[3] is valid and logical. The court further found that in view of its holding that the dismissal of Espinoza pur-

3. Nebraska does not recognize common law marriages.

suant to MAT Policy No. 3 was valid and legal, her claim of continuing discriminating conduct by MAT stemming from its refusal to hire her because of her size was not well founded. That matter was conciliated and MAT has met its obligation under the conciliation agreement.[4]

The dispositive issue on this appeal is whether MAT's no-spouse employment policy is illegal and void as applied to appellant because she is a single woman and not a spouse under Nebraska law.

■ Initially we consider Espinoza's contention that MAT's no-spouse employment policy is unconstitutional because it violates the equal protection clause. In *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1971), the Supreme Court discussed application of the clause to Idaho's statute giving preference to men over women in the appointment as administrator of a decedent's estate:

> In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [, 40 S.Ct. 560, 64 L.Ed. 989] (1920). The question presented by this case, then, is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of [the state statutes].

We must, therefore, consider the purpose of MAT policy and whether the classification utilized to carry out the policy is reasonable, not arbitrary, and has a rational relationship to the policy sought to be advanced by its operation. *Keckeisen v. Independent School Dist. 612*, 509 F.2d 1062, 1065–66 (8th Cir.), *cert. denied*, 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975). The district court noted that the manager of MAT testified concerning the purpose of MAT policy as follows:

> [A]ll employees bring conflicts from home to the job, but to have those conflicts "in double" when close relatives [are] both employed at the same job would cause unsafe conditions on the streets. Thus, to maintain safe working conditions for the benefit of MAT passengers as well as MAT employees, MAT implemented Policy No. 3.

In *Yuhas v. Libbey-Owens-Ford Co.*, 562 F.2d 496 (7th Cir. 1977), the Seventh Circuit noted that the no-spouse rule is predicated on the assumption that it is generally a bad idea to have both partners in a marriage working together:

> There are a number of reasons why this assumption is plausible. First, the marital relationship often generates intense emotions which would interfere with a worker's job performance. The typical employee is often able to temporarily put aside these emotional feelings when he or she goes to work because the work environment is sharply differentiated from the home environment. This distinction becomes impossible if the employee's spouse is also his or her coworker.

> Second, if an employee who works with his or her spouse became involved in a grievance with the employer or another worker, the two spouses might be expected to take the same side in the dispute. This factor could hamper the expeditious resolution of grievances.

> Third, if both partners in a marriage were employed together, and one spouse was promoted to a supervisory position,

---

4. Espinoza made a further allegation of conspiracy to deprive her of constitutional rights in violation of 42 U.S.C. § 1985(3), which fails because of her failure to establish discrimination.

numerous problems could arise. One spouse might resent the other's promotion, preventing the promoted worker from efficiently performing his or her new job. The person in the supervisory position might have a great deal of difficulty in imposing discipline on or otherwise exercising authority over his or her spouse. Moreover, the other workers who were placed under the authority of the higher-ranking partner might resent the "advantage," which his or her spouse received, whether or not the supervisor in fact favored his or her spouse.

Finally, a no-spouse rule eliminates the possibility of the already-employed marriage partner intervening in the hiring process on behalf of his or her spouse, to the detriment of the employer and any more qualified persons who did not obtain the job because of this intervention.

It would be hard to prove that any of these reasons for maintaining a no-spouse rule are valid in the sense that, without the rule, production would fall. Our devices for measuring industrial efficiency and morale are not so finely tuned that they can easily make such a determination. On the other hand, these reasons are far from frivolous. They correspond to the reasons which have led a number of institutions to conclude that family members should not work in the same environment. The movement to a sharp dichotomy between the workplace and the home may not in the long run prove to be a fruitful one, but it has become widely prevalent in our society.

*Id.* at 499.

We are satisfied that the district court properly concluded that the preclusion of spouses is a reasonable classification which bears a fair and substantial relationship to the objectives of the policy and establishes a policy which is neither arbitrary nor capricious.

■ In this case we have the additional question of whether the word "spouses"

should be interpreted to include persons who are not legally married but who live together with all the attendant responsibilities and commitments of marriage. In view of the stated purpose of the no-spouse policy the interpretation of the word "spouse" to include a person who lives in an espoused relationship is valid and logical. The underlying rationale of the policy is served in either case. Further, we are not persuaded that the MAT policy as so interpreted is impermissibly vague and indefinite. *Cf. Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The mere fact that Nebraska does not recognize common law marriages does not distinguish the cohabitation arrangement from a formal marriage relationship insofar as the basis for the no-spouse policy is concerned. The disadvantages of the non-marriage status under Nebraska law, *e. g.,* ineligibility for health insurance benefits payable to a wife, are not before us. Our holding is limited to the no-spouse employment policy which we find not to be discriminatory, arbitrary or capricious in violation of appellant's constitutional rights.[5]

Affirmed.

---

5. Espinoza's claim that MAT's original refusal to hire her because she did not meet size requirements was conciliated in her favor. Under the conciliation agreement Espinoza waived any claim to damages arising therefrom and therefore it is not a cognizable claim herein.