Kyle COLLIER and Barry Hardin, Appellants,

v.

**FIREMEN'S AND POLICEMEN'S CIVIL SERVICE COMMISSION OF WICHITA FALLS, Texas, and the City of Wichita Falls, Texas, Appellees.**

No. 2–90–182–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 22, 1991.

Rehearing Overruled Nov. 20, 1991.

Van Os, Deats, Rubinett & Owen, P.C., B. Craig Deats, Austin, for appellants.

Gregory D. Humbach, City Atty., Wichita Falls, for appellees.

Before WEAVER, C.J., and MEYERS and DAY, JJ.

OPINION

MEYERS, Justice.

The appellants seek to reverse the trial court's ruling that the "nepotism" amendment to Rule V, section 7 of Wichita Falls Civil Service Rules does not violate TEX. LOC.GOV'T CODE ANN. ch. 143 (Vernon 1988) or the appellants' equal protection rights under TEX.CONST. art. 1, §§ 3 and 19.

We affirm.

This action for a declaratory judgment by appellants has returned to us on appeal after a trial to the court. Previously, both parties had filed motions for summary judgment in the trial court; appellees' motion was granted. This court reversed the district court's original judgment and remanded the case for trial on the merits. *See Collier v. Civil Serv. Comm'n*, 764 S.W.2d 364 (Tex.App.—Fort Worth 1989, writ denied). Appellants now appeal the district court's ruling in favor of the appellees.

Prior to the events giving rise to this cause, the City of Wichita Falls, Texas, a home rule city, adopted Texas Local Government Code chapter 143 titled "Municipal Civil Service."[1] On May 8, 1984, appelle Firemen's and Policemen's Civil Service Commission of Wichita Falls, Texas, adopted an amendment entitled "Nepotism" to Rule V, section 7 of the Civil Service Rules for firefighters and policemen. The Wichita Falls City Council approved the nepotism amendment to the Civil Service Rules on June 19, 1984.

Under the Wichita Falls nepotism amendment, no person may be employed in the City's fire department if a member of his or her immediate family is employed in the fire department. Immediate family is defined in the amendment to include the following relatives: husband, wife, daughter, daughter-in-law, stepdaughter, son, son-in-

law, stepson, father, stepfather, father-in-law, mother, mother-in-law, stepmother, brother, brother-in-law, sister, sister-in-law, grandfather, grandmother, grandson, granddaughter, niece, nephew, aunt and uncle.

In the summer of 1987, the Commission announced an entrance examination for entry level firefighter positions with the City's fire department, such examination to be conducted on September 12, 1987. Both appellants submitted an application, took and passed the September 12, 1987 entrance examination. However, both appellants were later excluded from the eligibility list as a result of the nepotism amendment. Appellants each have an immediate family member, as defined in the nepotism amendment, presently working for the City's fire department. Appellant Barry Hardin's father is a fire equipment operator, and appellant Kyle Collier's father-in-law is a battalion chief.

■ Appellants' first three points of error assert that the City of Wichita Falls is precluded from adopting a nepotism amendment to chapter 143 of the Texas Local Government Code. The appellees contend that the nepotism amendment and chapter 143 of the Local Government Code are not opposed to one another and that a reasonable construction can be reached which would leave both in effect. Appellees further emphasize that nowhere in chapter 143 does it prohibit municipalities from adopting local civil service rules and regulations which establish greater protective qualifications for entry level positions than those specified in the statute itself.

The appellants argue that section 143.-025(a) which states "[t]he commission shall provide for open, competitive, and free entrance examinations to provide eligibility lists for beginning positions in the fire and police departments" is the exclusive stan-

[1]. At the time suit was filed, the relevant statute was TEX.REV.CIV.STAT.ANN. art. 1269m (Vernon 1963), which was later codified as TEX.LOC.GOV'T CODE ANN. ch. 143 (Vernon 1988). The codification of article 1269m has no impact on the merits of appellants' claims. The legislature, in codifying article 1269m and other provisions of the new Local Government Code, effected no

substantive change in the pre-existing statutes. *See* Act of April 30, 1987, 70th Leg., R.S., ch. 149, § 51, 1987 Tex.Gen.Laws 707, 1308; TEX. LOC.GOV'T CODE ANN. § 1.001(a) (Vernon 1988); *cf. Carbide Int'l v. State*, 695 S.W.2d 653, 656 n. 3 (Tex.App.—Austin 1985, no writ). For ease of reference, the statute will be referred to herein in its newly codified form.

dard from which the City may choose candidates for these departments. TEX.GOV'T CODE ANN. § 143.025(a) (Vernon 1988). Appellants claim that the City's nepotism amendment sets up nonmerit requirements which are not specified by and thus are at odds with the Civil Service Act.

Finding no cases directly on point from the Texas courts the appellants cite us to *State ex rel. Bloomingdale v. City of Fairborn,* 2 Ohio St.3d 142, 443 N.E.2d 181 (Ohio 1983) as authority for their position that firefighters and police officers may only be appointed based on merit and fitness. In *Bloomingdale,* the Ohio Supreme Court struck down the City of Bloomingdale's nepotism policy as contravening the merit and fitness principle expressed in the city charter. But unlike the city charter in the City of Bloomingdale, chapter 143 does not state that a firefighter shall be chosen solely on the basis of merit nor does it restrict local municipalities from legislation in this area.

Though both parties cite *City of Sweetwater v. Geron,* 380 S.W.2d 550 (Tex.1964) as authority for their position, the ruling of the Texas Supreme Court in *City of Sweetwater* lends more credence to the appellees' argument. What the Supreme Court said in *City of Sweetwater* was that a municipality can further legislate in areas of Civil Service Law which are not already comprehensively covered by the Act. As the appellees correctly point out to us, that without further restriction to the chapter 143 qualification, cities and municipalities could not disqualify applicants who may have been convicted of numerous misdemeanors, who had unsatisfactory employment records, a history of mental illness, or a background of moral or fiscal irresponsibility which would make them unfit to serve in either the fire or police departments.

Because we find that chapter 143 of the Local Government Code does not specifically preempt the field in the area of what a qualified, competent, and suitable fire department applicant may be, we conclude that the nepotism regulation challenged by the appellants does not as a matter of law violate any rights of appellants to compete for entry level positions within the Wichita Falls Fire Department. Appellants' first three points of error are overruled.

■ In points of error numbers four through thirteen the appellants complain that the appellees' adoption of the nepotism amendment violates their equal protection rights arising under article 1, sections 3 and 19 of the Texas Constitution. As the parties have stated, the majority of the trial was focused on this aspect of the appellants' argument with both sides presenting extensive evidence to bolster their position.

The burden rested upon the appellants to prove that the appellees' nepotism amendment was unconstitutional. *Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945 (1949). The constitutionality of the City of Wichita Falls nepotism regulation must be upheld unless the appellants established at trial that the classification and the rule are not rationally related to a legitimate state interest. *Id.*

Though the appellants contend in their brief that the Wichita Falls nepotism regulation was initiated to advance an unsuccessful affirmative action plan, the appellees correctly point out that this was not their intended purpose and the bulk of the evidence demonstrated their real purpose in passing the regulation. The trial court's findings of fact numbers six through nine conclude that the appellees established three legitimate governmental objectives. These findings conclude that the regulation established the following:

6. The Defendants' "nepotism" policy enhances the reliability of firefighters by removing the potential for impairment of judgment between related firefighters.

7. Firefighters for the City of Wichita Falls are occasionally placed in perilous situations where their judgment could be impaired, thus adversely affecting their safety if close relatives were working with them.

8. Expert sociological and psychological testimony confirm that the City of Wichita Falls nepotism policy substantially reduces the potential for conflict of

interest, favoritism and impairment of judgment among firefighters.

9. The City of Wichita Falls' nepotism policy is appropriate and drawn to achieve its intended purpose of reducing the potential for conflict of interest, impairment of judgment, and favoritism among related firefighters in the Wichita Falls Fire Department.

The appellants in several of their points of error challenge both the legal and factual sufficiency of the district court's ruling in this area. The evidence produced by the appellees was accomplished by and large through the testimony of expert witnesses. The main complaint that the appellants have in relation to the testimony of these experts goes more toward their experience and background rather than to the actual testimony and the derivative conclusions which they offered.

The appellees called two expert witnesses to testify on these issues—Dr. Robert Clark and Dr. Jacqueline Cuevas; appellants stipulated to their qualifications as experts.

Dr. Clark, a sociologist, testified as to the impairment of judgment in the decision-making process of a firefighter when a family member who is a firefighter was in a perilous situation; concluding that the tendency would be for the firefighter to favor the family member over duty to the assigned position, and possibly placing both members in danger.

Dr. Clark emphasized the difference between real family members and the family-like atmosphere which oftentimes develops between fellow workers confined to close association for extended periods of time. Dr. Clark concluded that real family members still favor one another over close work associates. This witness also stated that the regulation adopted by the appellees here is the least restrictive nepotism policy that would alleviate the potential conflicts of interest, favoritism, and impairment of judgment.

Dr. Cuevas, a psychologist, commented on the potential for conflict sometimes brought to the workplace by members of the same family, possibly endangering all those with whom they work. Dr. Cuevas concluded her testimony by indicating that she did not know of any way to tailor a less restrictive nepotism policy that would achieve the objectives of removing impairment of judgment, favoritism, and conflict of interest.

Though the appellants produced numerous witnesses and extensive testimony to refute the ideas and conclusions of the appellees' experts, the trial court was not of the opinion that their evidence was enough to surpass the appellees' "legitimate interest" testimony and chose to rely on the opinions of appellees' witnesses instead. Since we cannot simply substitute our opinion for that of the trial court, particularly in light of expert testimony presented by the appellees, we must conclude that the evidence was legally and factually sufficient.

It is noted that an equal protection analysis under the Texas Constitution is not necessarily identical to that used by the federal courts in interpreting the equal protection provisions of the U.S. Constitution. Indeed, the U.S. Supreme Court itself has noted "that the language of the Texas constitutional provision is different from, and arguably significantly broader than, the language of the corresponding federal provisions." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152, 162 (1982). The Texas Supreme Court likewise has noted that state constitutions can and often do provide additional rights for their citizens, and has placed itself in "the mainstream" of a movement among state courts to look to their own constitutions to protect individual rights. *Lucas v. United States*, 757 S.W.2d 687, 692 (Tex.1988); *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex.1986). Recently, the court has continued this trend, finding protection under the state constitution in areas unprotected by federal constitutional guarantees. *Edgewood Indep. School Dist. v. Kirby*, 777 S.W.2d 391 (Tex.1989) (State School finance system violates article VII, section 1 of Texas Constitution); *Lucas*, 757 S.W.2d 687 (medical

malpractice cap violates Texas "open courts" provision).

The appellants cite two Texas Supreme Court rulings wherein the Supreme Court struck down regulation where the purpose of the regulation was legitimate but the classification drawn by the regulation was not reasonable in light of the purpose. *See Whitworth v. Bynum*, 699 S.W.2d 194 (Tex.1985); *Sullivan v. University Interscholastic League*, 616 S.W.2d 170 (Tex. 1981). The expert testimony before us establishes that the City of Wichita Falls sought to protect all concerned both within and outside of the department and that the adoption of the regulation sought to pursue a legitimate state interest. Nepotism is a legitimate concern in many other areas of state and local government and the courts have usually upheld its implementation when it was correctly applied. *See Espinoza v. Thoma*, 580 F.2d 346 (8th Cir.1978); *Keckeisen v. Independent School Dist. 612*, 509 F.2d 1062 (8th Cir.1975); and *Lewis v. Spencer*, 468 F.2d 553 (5th Cir.1972). The Texas legislature has also recognized the need for nepotism regulations and restrictions and has codified that policy into TEX.REV.CIV.STAT.ANN. art. 5996a (Vernon Supp.1991). It is clear to us that the Wichita Falls nepotism regulation does indeed further a legitimate state interest and does not violate the appellants' equal protection rights under the Texas Constitution. Appellants' points of error numbers four through thirteen are overruled.

In appellants' points of error numbers fourteen and fifteen they complain that the district court erred in not awarding them positions in the Wichita Falls Fire Department and in denying their request for attorney's fees, respectively. Because of our ruling herein we must overrule appellants' point of error number fourteen. Further, because the award of attorney's fees in a declaratory judgment action is discretionary with the trial court, *United Interests v. Brewington, Inc.*, 729 S.W.2d 897 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), and also in consideration of our ruling herein, we do not find that the trial court abused its discretion in not awarding appellants their attorney's fees. Point of error number fifteen is also overruled.

Judgment affirmed.