William NUGENT, et al., Plaintiffs,

v.

The CITY OF HOUSTON,
et al., Defendants.

Civil Action No. H–98–3915.

United States District Court,
S.D. Texas,
Houston Division.

July 20, 2001.

Andrew S. Golub, Houston, TX, for plaintiffs.

John E. Fisher, City of Houston, Legal Dept, Houston, TX, for defendants.

### *MEMORANDUM AND ORDER*

LAKE, District Judge.

Plaintiffs, William Nugent and Craig Sodolak, filed this action against defendants, the City of Houston ("the City"), the Fire Fighters' and Police Officers' Civil Service Commission ("the Commission"), and Rodney Brisco, in his capacity as chairman of the Commission. Nugent and Sodolak allege that the City and the Commission routinely use racial preferences to prevent Caucasian applicants from being hired as entry-level police officers and fire fighters. Plaintiffs also allege that, in furtherance of this illegal affirmative action scheme, defendants have refused to follow Texas law that governs the procedure for hiring entry-level employees.

Plaintiffs allege that defendants are guilty of race discrimination in hiring in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and of violating the Firemen's and Policemen's Civil Service Act, Tex. Loc. Gov't Code §§ 143.001 *et seq.* (Vernon's 2000). Plaintiffs seek entry-level positions with the Houston Police Department and Houston Fire Department, damages, declaratory relief, a permanent injunction, costs, and attorneys' fees. In addition to suing defendants on their individual claims, plaintiffs sue defendants on behalf of a class of plaintiffs certified by the court as "all non-minority applicants for entry-level positions with the City of Houston Police and Fire Departments, who have been (or will be) eliminated from the application process without first having been given the civil service examination required by the Texas

Local Government Code, and rank-ordered based upon their score(s)." [1]

Pending before the court are defendants' Motions for Summary Judgment against Sodolak (Docket Entry No. 39) and against Nugent (Docket Entry No. 40), and Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 43). For the reasons set forth below, defendants' motions will be denied, and plaintiffs' motion will be granted.

## I. *Standard of Review*

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R.Civ.P. 56(c). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact creates a "genuine issue" if the evidence is such that the trier of fact reasonably could resolve the factual dispute in favor of either party. *Id.* 106 S.Ct. at 2511.

The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.*

If the party moving for summary judgment meets this initial burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "This burden is not satisfied with 'some meta-physical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.*, quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 3180, 111 L.Ed.2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir.1994); and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir.1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## II. *Background*

William Nugent, who is Caucasian, is a past applicant for an entry-level position with the Houston Police Department ("HPD"). Before his application was rejected, Nugent was not allowed to take the entrance examination for a beginning position with the police department, as set out in § 143.025 of the Texas Local Govern-

---

1. *See* April 8, 1999, Order, Docket Entry No. 23.

ment Code. Craig Sodolak, who is also Caucasian, is a past applicant for an entry-level position with the Houston Fire Department ("HFD"). Sodolak was also denied the opportunity to take the entrance examination before his application for HFD was rejected.

Plaintiffs allege that defendants hire police cadets and fire fighter recruits using minority race preferences without first administering the statutory entrance examination to these recruits. Plaintiffs allege, and defendants do not dispute, that only after these recruits receive nearly six months of academy training are they required to take the entrance examinations. Plaintiffs allege that defendants retain all initial hires who pass the examination, without regard to their passing scores. Plaintiffs allege that this scheme violates Tex. Loc. Gov't Code § 143.026, which requires that HPD and HFD vacancies for beginning positions be filled by persons on the examination eligibility lists who have achieved the highest scores on the entrance examinations.

### III. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs argue that they are entitled to partial summary judgment that defendants are violating Chapter 143 of the Texas Local Government Code in their hiring practices for entry-level positions within the HPD and HFD. Plaintiffs request a declaratory judgment that HPD and HFD academy trainees are "beginning positions" within the meaning of the term in Tex. Loc. Gov't Code § 143.025. Plaintiffs also request a declaratory judgment that since academy trainees are "beginning positions" with HPD and HFD, defendants are not complying with Chapter 143 because defendants are hiring applicants into the HPD and HFD academies before administering the statutorily-required entrance examinations.

### A. Section 143.025 of the Texas Local Government Code

Section 143.025 of the Texas Local Government Code states:

(a) The [Fire Fighters' and Police Officers' Civil Service] commission shall provide for open, competitive, and free entrance examinations to provide eligibility lists for *beginning positions* in the fire and police departments. The examinations are open to each person who makes a proper application and meets the requirements prescribed by this chapter. (Emphasis added.)

(b) An eligibility list for a beginning position in the fire or police department may be created only as a result of a competitive examination held in the presence of each applicant for the position .... The examination must be based on the person's knowledge of and qualifications for fire fighting and work in the fire department or for police work and work in the police department and must inquire into the applicant's general education and mental ability. *A person may not be appointed to the fire or police department except as a result of the examination.* (Emphasis added.)

Plaintiffs allege that when they applied for employment with HPD and HFD they were not administered entrance examinations, as required by § 143.025, before their applications were rejected. Plaintiffs also allege that the applicants who were actually hired and admitted into the police and fire academies instead of plaintiffs were selected without having taken the statutorily-required examinations. Plaintiffs allege that these applicants received training in the police and fire academies for nearly six months and were only administered the entrance examinations after they completed their time as academy trainees.

## B. "Beginning Position"

■ The parties dispute whether the term "beginning position" in Chapter 143 of the Local Government Code includes cadets and trainees in the Houston police and fire academies.

■ The construction of a statute is a question of law for the court. *See City of Dallas v. Cornerstone Bank*, 879 S.W.2d 264, 269 (Tex.App.—Dallas 1994, no writ). In interpreting a statute, a court must diligently attempt to determine and give effect to the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). Legislative intent must be determined from the entire act, and not from isolated portions thereof. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990). To determine legislative intent, a court must look first to the statute's plain and common meaning. *Albertson's*, 984 S.W.2d at 960. Words are to be given their plain meaning unless they have been given a particular meaning by statutory definition or otherwise. *See* Tex. Gov't Code Ann. § 311.011.

Plaintiffs argue that Chapter 143 of the Local Government Code expressly treats academy trainees as holding "beginning positions" within their respective departments. As set forth in Tex. Loc. Gov't Code § 143.025(h), for example, the Commission is to "give new examinations at times the commission considers necessary to provide required staffing for scheduled fire or police training academies" (emphasis added). Plaintiffs argue that the statutory language plainly reflects the legislature's mandate for administration of entrance examinations as a predicate to filling police and fire academy trainee positions. Defendants contend that the language of the statute is ambiguous as to whether entrance examinations are to be administered before entry into the police or fire training academies.

The court concludes that Chapter 143 of the Local Government Code contemplates that trainees at the police and fire academies are beginning positions in their departments. Section 143.027(a) states that "[a] person appointed to a *beginning position* in the fire or police department must serve a probationary period of one year beginning on that person's date of employment as a fire fighter, police officer, or *academy trainee*" (emphasis added). Texas courts have found that this section "expressly treats an academy trainee as someone who holds a 'beginning position in the [police or] fire department.' " *City of Austin v. Austin Professional Fire Fighters Ass'n*, 935 S.W.2d 179, 182 (Tex.App.—Austin 1996), *judgment vacated pursuant to settlement*, No. 97–0077 (Tex.1997).

Moreover, Texas courts have held that police officers and fire fighters earn seniority credit for the time they spend as academy trainees. *See, e.g., City of Pasadena v. Cunningham*, 693 S.W.2d 751 (Tex.App.—Houston [14th Dist.] 1985, no writ) (seniority points include time plaintiff spent in "unclassified" position of "Patrolman, Probationary"); *Klinger v. City of San Angelo*, 902 S.W.2d 669, 675 n. 6 (Tex.App.—Austin 1995, writ denied) (police officers and fire fighters receive credit for time served in their probationary positions, even though these position lack full civil service protection); *City of Austin v. Austin Professional Fire Fighters Association*, 935 S.W.2d at 181–82 (time spent as fire academy cadet was service time in fire department for purposes of calculating longevity pay).

Defendants' own records reflect that they consider that police cadets and fire trainees are the lowest beginning positions in their respective departments. A list of HPD salary and benefits levels indicates

that the lowest rank within HPD is that of "Police Cadet."[2] David Gott, a captain with the Houston Police Department who was formerly in charge of the Recruiting Division, testified that police cadets are the "lowest level police employee."[3] Barbara Chelette, HFD's director of budgeting, human resources, and recruiting, also testified that fire academy trainees comprise the entry-level or beginning fire fighter position.[4]

The court concludes that the plain and unambiguous meaning of the term "beginning position" in Chapter 143 includes "academy trainee" within its definition.

## C. Defendants' Hiring Practices

■ Defendants have never disputed that they hire applicants as academy trainees before the entrance examination is administered. Barbara Chelette testified that fire academy trainees are hired before the entrance examination is administered.[5] Norman Wong, an Assistant Chief of Police who oversees recruiting, personnel, and training, testified that entrance examinations are only given towards the end of academy training.[6] Dr. Diana Rathjen, Human Resources Manager for the City of Houston, also testified that entrance examinations are administered to applicants for beginning positions with the fire and police departments at the end of the respective academies.[7] Defendants state that this practice has been in place for over 20 years.[8]

Chapter 143 of the Local Government Code states that "[a]n eligibility list for a beginning position in the fire or police department may be created *only* as a result of a competitive examination" and "[a] person may not be appointed to the fire or police department *except* as a result of the examination." Tex. Loc. Gov't Code § 143.025(b) (emphasis added). Academy trainees are "beginning positions" with the police and fire departments under the statute. Accordingly, the court concludes that defendants' hiring practices violate Chapter 143 of the Local Government Code.

## D. "A Proper Application"

Tex. Loc. Gov't Code § 143.025(a) states that entrance examinations are open "to each person who makes a *proper application* and meets the requirements prescribed by this chapter" (emphasis added). Chapter 143 does not expressly define the term "proper application." The "requirements prescribed by [Chapter 143]" include age and literacy requirements that

**2.** HPD Requirements, Exhibit 4 attached to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 43, at unnumbered p. 2.

**3.** Deposition of David A. Gott, Exhibit 3 attached to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 43, at p. 66.

**4.** Deposition of Barbara Chelette, Exhibit 1 attached to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 43, at p. 8.

**5.** *Id.* at 14.

**6.** Deposition of Norman Wong, Exhibit 5 attached to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 43, at p. 7.

**7.** Deposition of Diana Rathjen, Exhibit 7 attached to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 43, at p. 16.

**8.** *See* Defendants' Reply to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 52, at p. 10 n. 23; Deposition of Murvel L. Yates, Exhibit 10 attached to Defendants' Exhibits for Defendants' Motions for Summary Judgment, Docket Entry No. 42, at p. 15. (Yates is an HPD captain who was formerly head of the Recruiting Division.)

must be satisfied before an applicant is eligible for a beginning position. *See* Tex. Loc. Gov't Code § 143.023(a) (applicant may not take the entrance examination unless he is at least 18 years of age); Tex. Loc. Gov't Code § 143.023(b), (c), and (f) (imposing additional age and literacy requirements in order to be "certified as eligible for a beginning position").[9] Other provisions allow the City to impose additional requirements as part of a "proper application," including physical and mental fitness tests,[10] submission of written questionnaires that are later verified through background investigations and polygraph examinations,[11] a driving record reflecting prudence and maturity, and positive employment references.[12]

■ Defendants argue that they may also impose as a requirement for a "proper application" that applicants successfully complete training in the police or fire academy.[13] Defendants argue that the requirements contained in §§ 143.023, *et al.,* are only "minimum requirements" for eligibility to take the civil service examination. Defendants argue that the absence of a definition for "a proper application," as well as the previously-cited provisions of Chapter 143, give the City authority to make a reasonable determination of what constitutes "a proper application," and that this authority allows the City to impose

the additional requirement of the completion of academy training prior to the entrance examination.

Defendants also cite a number of cases that have upheld city ordinances in the face of Chapter 143 challenges. *See, e.g., City of Sweetwater v. Geron,* 380 S.W.2d 550 (Tex.1964) (city could set a maximum age limit for city employees); *Collier v. Firemen's and Policemen's Civil Service Commission of Wichita Falls,* 817 S.W.2d 404 (Tex.App.—Fort Worth 1991, writ denied) (Commission could adopt, and Chapter 143 did not preclude use of, anti-nepotism rule for hiring into the city's fire department). Defendants argue that these authorities establish that Chapter 143 will not limit a home rule city's authority to impose additional entrance requirements on police and fire fighter applicants unless the legislative intent to do so is clear.

The court is not persuaded by defendants' argument. None of the cited authority supports defendants' argument that the Texas Legislature allows a police or fire fighter applicant to successfully complete academy training before taking the entrance examination. Sections 143.025 and 143.026 expressly provide that entrance examinations are to be administered for "beginning positions" with the police and fire departments. Because

---

**9.** Sections 143.105 and 143.1051 impose additional age, military, and educational requirements that police and fire fighter applicants must meet before they may be "certified as eligible for a beginning position."

**10.** Tex. Loc. Gov't Code § 143.008(b)(2) states that the Commission may not permit the appointment or employment of a person who is "physically or mentally unfit." Section 143.022 also authorizes the Commission to set age and physical requirements for applicants and to require physical and mental examinations for applicants.

**11.** Tex. Loc. Gov't Code § 143.008(b)(1) states that the Commission may not permit the appointment or employment of a person who is "without good moral character."

**12.** *See* Houston Police Department Recruit Selection Criteria Revised February 17, 1994, Exhibit 17 attached to Deposition of David A. Gott, Exhibit 5 attached to Defendants' Exhibits for Defendants' Motions for Summary Judgment, Docket Entry No. 42, at pp. 4, 17.

**13.** *See, e.g.,* Defendants' Motion for Summary Judgment Against Plaintiff Craig Sodolak, Docket Entry No. 39, at p. 6.

academy trainee positions are "beginning positions" within the meaning of the statutes, Sections 143.025 and 143.026 impose a legislative requirement that entrance examinations are to be administered before HPD and HFD applicants enter the academies.

Neither of the cases cited by defendants involved a provision of Chapter 143 that expressly preempted an implied power that the city adopted by ordinance. *See City of Sweetwater,* 380 S.W.2d at 552 (maximum age limits "is not specifically covered in the [Firemen's and Policemen's Civil Service] Act. The Civil Service Commission is given no authority in this field, nor is the City specifically prohibited from exercising its authority in this field."); *Collier,* 817 S.W.2d at 406 (finding that a municipality can further legislate in areas that are not already comprehensively covered by the Act and that Chapter 143 of the Local Government Code does not specifically preempt the application of a nepotism regulation). By contrast, Sections 143.025 and 143.026 provide that entrance examinations are to be administered *before* HPD and HFD applicants are hired into the training academies. While defendants may be able to impose additional screening requirements on HPD and HFD applicants before administering the entrance examination, defendants cannot hire applicants into beginning positions with HPD and HFD without first administering the examination. Accordingly, plaintiffs are entitled to summary judgment on this issue.

**E. Collective Bargaining Agreement**

■ Defendants contend that plaintiffs cannot challenge the current recruiting policies of HPD because the Houston Police Officers' Union, the majority bargaining agent for all police officers, entered into a collective bargaining "meet and confer" agreement with the City in November of 1998, pursuant to §§ 143.351 *et seq.* of the Texas Local Government Code. This "meet and confer" agreement provides in Article 22 that

> The hiring and selection procedure currently used by the HPD to select recruits for the Police Academy shall continue as is; HPD is specifically authorized during the term of this Agreement and any extensions thereof to give Civil Service entrance examinations after cadets have completed the Academy training and classes.[14]

Defendants argue that this collective bargaining agreement supersedes any provision of the Local Government Code that purports to require the administration of civil service entrance examinations prior to hiring cadets into the police academy.

Section 143.361(a) of the Local Government Code states that "[a] written agreement ratified under this subchapter between a public employer and the majority bargaining agent supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, and other *terms of employment* to the extent of any conflict with the previous statute" (emphasis added). Section 143.361(b) provides that such a written agreement "preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or a political subdivision or agent of the state." Defendants argue that these provisions of the Local Government Code allow them to modify their hiring practices pursuant to written agreement between the City and the police officers' union.

In response plaintiffs argue that the police officers' union is the bargaining representative only for current police officers

---

**14.** City of Houston Ordinance No. 98–1045, Exhibit 3 attached to Defendants' Opposition to Plaintiffs' Motion for Class Certification, Docket Entry No. 19, at p. 26.

and that the union has no authority to bargain away the rights of non-employee cadet candidates. Plaintiffs argue that the union, in arriving at the "meet and confer" agreement, did not, and could not, represent the interests of applicants for entry-level police officer positions. Plaintiffs argue that the "meet and confer" agreement is therefore binding only upon the constituency represented by the bargaining agent, i.e., the current police officers themselves. Plaintiffs also argue that § 143.361(a) does not state that any written agreements between the City and the police union may supersede a statute relating to "hiring."

The collective bargaining agreement does not apply to plaintiffs in this case. Plaintiffs are not members of the Houston Police Officers' Union since they were never employed by the Houston Police Department. Therefore, they cannot be held to the terms of the union's agreement. Moreover, the court is persuaded that § 143.361 of the Local Government Code applies to written agreements concerning the "terms of employment" only as they relate to actual employment with HPD. Section 143.361 does not apply to hiring practices.

## IV. *Defendants' Motions for Summary Judgment*

Defendants argue that they are entitled to summary judgment on all of plaintiffs' claims because the City and the Commission have not engaged in racial discrimination against non-minority applicants in their hiring practices. Defendants argue that at most, they have attempted to increase minority representation in hiring by actively recruiting in the minority community. Defendants argue that this affirmative action plan does not violate Title VII or the Constitution. Defendants also argue that plaintiffs' applications for employment with HPD and HFD were rejected for legitimate, non-discriminatory reasons and that plaintiffs' claims are barred by limitations.

## A. Limitations

■ Defendants argue, and the court agrees, that a two-year statute of limitations applies to plaintiffs' claims under 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *See* Tex. Civ. Prac. & Rem.Code § 16.003 (Texas statute of limitations for personal injury is two years); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (state statute of limitations for personal injury applies to § 1983 claims); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir.2000) (two-year period applies to actions under § 1981). Defendants have not, however, explained how the statute of limitations bars plaintiffs from prosecuting this action.

Plaintiffs filed this action on November 20, 1998. Although neither side has provided the court with information concerning any other dates that may be relevant to defendants' limitations defense, it appears from the record that Nugent's application with HPD was rejected on May 15, 1997, and that Sodolak's application with HFD was rejected on October 22, 1997. It thus appears that plaintiffs have complied with the statute of limitations.

## B. The Merits of Plaintiffs' Claims

### 1. *Race Discrimination*

Defendants argue that they are entitled to summary judgment because they did not racially discriminate against plaintiffs when they rejected plaintiffs' employment applications. Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(a). In addition, it is unlawful "for any employer, labor organization, or joint la-

bor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race ... in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e–2(d).

■ Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981. "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a claim under § 1981, plaintiffs must show intentional discrimination on account of race. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996). Both Title VII and § 1981 actions require that racial discrimination motivate the employment decision at issue. *See Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996). Because the elements of plaintiffs' Title VII and § 1981 claims are identical, the court employs the same analysis in evaluating these claims. *See Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1285 n. 4 (5th Cir.1994), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995).

An employer's decision not to hire a person violates Title VII when that decision is based on race, whether that race be white or black. *See McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Byers,* 209 F.3d at 426 (the fact that an individual is not a member of a racial minority in the workplace does not prevent that individual from establishing a prima facie case of reverse discrimination under Title VII). In the absence of direct evidence of racial discrimination, courts use the basic framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Under that framework, the plaintiffs must establish a prima facie case of discrimination. *See id.* at 1824. If the plaintiff succeeds in establishing a prima facie case, the defendant must provide some legitimate, non-discriminatory reason for the individual's rejection. If the employer provides a legitimate, non-discriminatory reason for the employment action, the plaintiff must then produce evidence from which a rational trier of fact could find that the defendants' nondiscriminatory reason is merely a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The evidentiary framework applied in Title VII cases is also appropriate for claims of race discrimination asserted under section 1981. *See Guillory,* 802 F.2d at 824.

To establish a prima facie case of reverse discrimination based on race, plaintiffs must establish: (1) that they are members of a protected group; (2) that they were qualified for the employment positions they sought; (3) that they were not hired for the positions; and (4) that they were replaced by individuals outside of the protected group. *See Singh v. Shoney's, Inc.,* 64 F.3d 217, 219 (5th Cir.1995); *Byers,* 209 F.3d at 426.

Defendants have not addressed the issue of plaintiffs' prima facie case in their motions for summary judgment. Defendants argue that they are entitled to summary judgment because they had legitimate, non-discriminatory reasons for rejecting Nugent's and Sodolak's applications to HPD and HFD, respectively. Defendants

state that Nugent's application was rejected for dishonesty, following an individualized assessment by the HPD recruiting division, because Nugent falsely reported that he had been fired from only one job when, in fact, he had been fired from three previous jobs. Defendants also state that Nugent failed to disclose all of his previous applications to other law enforcement agencies.[15]

Defendants state that Sodolak's application to HFD was rejected because of "unstable work history."[16] Sodolak admitted in his application that he had previously been fired from two jobs. Sodolak stated on his applicant questionnaire that HFD should not contact his present employer. Sodolak claims that he made this request to HFD because he believed that if HFD alerted his employer that he was planning to change jobs his position there would have been jeopardized.

Both Nugent and Sodolak argue that they were well-qualified for positions within HPD and HFD and that the reasons stated by defendants for the rejection of their applications are false and merely a proxy for their non-minority race. To survive summary judgment plaintiffs must present evidence that: (1) creates a fact issue as to whether the defendants' stated reasons actually motivated their failure to hire plaintiffs; and (2) creates a reasonable inference that race was the determinative factor in defendants' failure to hire plaintiffs. *See LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 450 (5th Cir.1996); *Vadie v. Mississippi State University,* 218 F.3d 365, 373 (5th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1092, 148 L.Ed.2d 966 (2001).

### 2. Constitutional Claims Under § 1983

Plaintiffs allege that defendants have a formal policy of discriminating against non-minority applicants in conjunction with an affirmative action scheme for entry-level hiring into HPD and HFD. Defendants respond that their affirmative action plan was geared only towards the increased recruitment of minority applicants, which is lawful. Defendants argue that their affirmative action plan does not trigger constitutional or statutory strict scrutiny, and that even if strict scrutiny analysis were appropriate, their affirmative action plan would still be valid.

42 U.S.C. § 1983 provides: "Every person who, under color of [state law], subjects or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. A municipality may be liable under § 1983". *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). If the City's actions unlawfully discriminated against the plaintiffs in contravention of the Equal Protection Clause, the City would be liable under § 1983. *See Police Ass'n of New Orleans v. City of New Orleans,* 100 F.3d 1159, 1170 (5th Cir.1996).

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, § 1. "Its central purpose is to prevent the states from purposefully discriminating between individuals on the ba-

---

**15.** *See* Deposition of Murvel L. Yates, Exhibit 10 attached to Defendants' Exhibits for Defendants' Motions for Summary Judgment, Docket Entry No. 42, at p. 46 and Exhibit 49.

**16.** *See* Defendants' Motion for Summary Judgment Against Plaintiff Craig Sodolak, Docket Entry No. 39, at p. 11.

sis of race." *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 2824, 125 L.Ed.2d 511 (1993). "Any explicit racial classification, regardless of the burdens or benefits it imposes, is subject to strict scrutiny." *Walker v. City of Mesquite, Texas,* 169 F.3d 973, 981 (5th Cir.1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 969, 145 L.Ed.2d 840 (2000). Application of strict scrutiny involves two distinct inquiries. First, any racial classification must be justified by a compelling state interest. *Wygant v. Jackson Board of Education,* 476 U.S. 267, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986). Second, the means used by the state to accomplish its purpose must be narrowly tailored to the achievement of that goal. *See id.*

The Supreme Court has held that in furthering a compelling state interest, the government can, consistent with the Constitution, use racial preferences under particular circumstances to remedy the effects of past discrimination. *See, e.g., United States v. Paradise,* 480 U.S. 149, 107 S.Ct. 1053, 1064, 94 L.Ed.2d 203 (1987) ("The Government unquestionably has a compelling interest in remedying past and present discrimination by a state actor."); *Regents of the University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). But the Court has also placed several limitations on the use of racial preferences for remedial purposes. In *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260, the Court ruled that the government cannot use racial preferences to remedy general, societal discrimination. The Court has also ruled that a municipality may not use racial preferences in the awarding of construction contracts to rem-

edy discrimination in the construction industry as a whole. *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854. Moreover, the Fifth Circuit has ruled that although the Constitution allows the government to use racial preferences for the purpose of remedying the present effects of past discrimination, the government cannot constitutionally use racial preferences for the purpose of fostering racial diversity. *Hopwood v. Texas,* 78 F.3d 932, 948–49 (5th Cir.), *cert. denied,* 518 U.S. 1033, 116 S.Ct. 2580, 135 L.Ed.2d 1094 (1996) (state law school cannot use racial preferences to foster student body diversity).

### 3. *Analysis*

Plaintiffs have presented evidence that race may have been a determinative factor in defendants' hiring policies. Plaintiffs' evidence relates both to defendants' rejection of plaintiffs' own employment applications and to plaintiffs' allegations that defendants systematically discriminate against Caucasian applicants. Both categories of evidence are relevant to plaintiffs' employment claims and to their § 1983 claims.

Houston police officer Michael Pierce, who worked as a background investigator in the HPD recruiting division, stated that HPD routinely scrutinized minority applicants less closely than non-minority applicants.[17] Officer Pierce also stated that he observed several lesser-qualified minority applicants selected for the police academy over other better-qualified, non-minority applicants.[18] Plaintiffs also point to City of Houston memoranda issued by Sergeant L.A. Barrera of the HPD Recruiting Divi-

---

**17.** *See* January 2, 2001, Affidavit of Michael L. Pierce, Exhibit 25 attached to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50, at ¶¶ 5–6.

**18.** *See id.* at ¶ 8.

sion. According to these memos, "[a]ll minority applicants will be scheduled for testing," whereas only "[n]on-minority applicants who score 7 or above on the ranking scale will be scheduled for testing."[19] These documents, which apparently refer to the reading comprehension tests required for applicants, are evidence that HPD subjected non-minority applicants to a more demanding review than minority applicants.

Plaintiffs also present evidence that defendants may have used unlawful affirmative action plans. The City of Houston adopted an Affirmative Action Plan in January of 1981. In February of 1995 HPD adopted its own Equal Employment Opportunity Plan. The plan states that "[i]n order to make the department more reflective of the community, the city has authorized each police academy class to be comprised of at least 66% minority recruits."[20] The HPD plan describes a number of efforts taken by HPD to recruit minority applicants. The plan states that "since 1992, every police academy class has been comprised of no less than 60% minority members. Further, it is the intention of the Department to increase that number in 1995 to no less than 66% minority members, and to continue this trend to the year 2000."[21]

Plaintiffs argue that one way to achieve this goal, and similar goals set by the HFD, was to abandon the process required by Tex. Loc. Gov't Code §§ 143.025 and 143.026 for determining which applicants are admitted to the police and fire academies and instead to use subjective selection criteria that favor minority applicants. In support of this argument plaintiffs cite the affidavit of officer Pierce who stated that academy classes were hand-picked from the applicant pool in order to have classes made up of at least ⅔ minorities.[22] Moreover, the Barrera memoranda discussed above reflect an official HPD recruiting policy that favors minority applicants over Caucasian applicants in determining who will be scheduled for the reading comprehension tests required for applicants.

Plaintiffs point to similar evidence concerning HFD. Michael Bowen, a Houston fire fighter who worked in the recruiting division in the mid–1990's, stated that while he worked in the recruiting division of HFD, he noticed a shift in hiring in favor of preferring women and minorities.[23] Another HFD recruiting division employee at that time, John Malpass, testified that HFD captains referred to "Affirmative Action quotas."[24] Plaintiffs also point to an internal HFD document indicating goals for changing HFD's "racial make-up and needs."[25] The document, setting affirmative action employment

**19.** *See* Exhibits 29 and 30 attached to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50.

**20.** Houston Police Department Equal Employment Opportunity Plan (EEOP), February 1995, Exhibit 1 attached to Plaintiffs' Motion for Class Certification, Docket Entry No. 10, at p. 2.

**21.** *Id.* at p. 3.

**22.** *See* January 2, 2001, Affidavit of Michael L. Pierce, Exhibit 25 attached to Plaintiffs' Response to Defendants' Motions for Sum-

mary Judgment, Docket Entry No. 50, at ¶¶ 5–6.

**23.** Deposition of Michael Bowen, Exhibit 19 attached to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50, at p. 10.

**24.** Deposition of John Malpass, Exhibit 20 attached to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50, at p. 23.

**25.** *See* Cultural Awareness Recruiting Committee Affirmative Action Employment Goals,

goals for HFD, states that "[t]hese are minimums and actually striving to meet goals based on City of Houston population figures is acceptable." [26]

Defendants dispute the reliability of plaintiffs' evidence and argue that there was no formal policy of discriminating against non-minority applicants in favor of minority applicants. They present hiring figures for the years 1997 through 2000, which reflect that the ethnic breakdown of applicants hired did not substantially differ from the ethnic breakdown of applicants.[27] Plaintiffs counter with their own statistics broken down by individual police academy class, showing the percentage of Caucasian police academy hires per class to be as low as 22.67% in November of 1994 (but also as high as 52.70% in February of 1998).[28] Neither side presents any expert testimony about the relevance of these statistics to the issues before the court.

Viewing all the evidence as a whole, the court concludes that plaintiffs have presented some evidence that defendants have deliberately considered minority status in determining which applicants would be admitted to the police and fire academies. Viewing this evidence, a jury could reasonably conclude that defendants' failure to follow state law in hiring police and fire academy trainees was intended to facilitate a deliberate filling of academy classes using racial preferences. Issues of fact also remain as to whether plaintiffs' applications with HPD and HFD were rejected for legitimate, non-discriminatory reasons or to increase minority representation in academy classes. Ultimately, a jury must decide whether defendants denied plaintiffs employment because of their race.

## V. Conclusions and Order

Because substantial fact issues remain as to whether defendants unlawfully rejected plaintiffs' employment applications, Defendants' Motion for Summary Judgment Against Plaintiff Craig Sodolak (Docket Entry No. 39) and Defendants' Motion for Summary Judgment Against Plaintiff William Nugent (Docket Entry No. 40) are **DENIED**.

Chapter 143 of the Texas Local Government Code includes, by its very terms, academy trainees within its definition of "beginning positions" for police and fire departments. Houston police cadets and fire fighter trainees are beginning positions within the City of Houston Police and Fire Departments. Because defendants hire trainees into the HPD and HFD academies without first administering the statutorily required civil service examination, defendants are in violation of Tex. Loc. Gov't Code §§ 143.025 and 143.026. Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 43) is **GRANTED**.

The court will conduct a scheduling conference on July 27, 2001, at 3:00 p.m., in Court Room 9–B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.

---

Exhibit 21 attached to Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50.

26. *See id.* at unnumbered p. 1.

27. *See* Defendants' Motion for Summary Judgment Against Plaintiff Craig Sodolak, Docket Entry No. 39, at pp. 9–10. *See also*

"Summary of Exhibits 1–27—Police Hiring Statistics," Exhibit 17 attached to Defendants' Exhibits for Defendants' Motions for Summary Judgment, Docket Entry No. 42.

28. *See* Plaintiffs' Response to Defendants' Motions for Summary Judgment, Docket Entry No. 50, at p. 19 and Exhibit 37.